NEW YORK SECURITY & TRUST CO. v. CAPITAL RY. CO. (PHOENIX IRON WORKS, Intervener).

(Circuit Court, D. Kentucky. November 14, 1896.)

1. MORTGAGES—AFTER-ACQUIRED PROPERTY—CONDITIONAL SALES.

Where chattels are sold under an agreement that the title shall not pass until full payment, and are delivered to the purchaser after he has made a mortgage covering after-acquired property, of which mortgage the vendor has constructive notice through its record, the vendor's lien on such chattels for their price will prevail, as against the mortgagee, provided such chattels are separate and distinct personalty, and do not become part of the real estate mortgaged; but if, with the consent of the vendor, implied by his knowledge

of the mortgage, such chattels become a part of the realty, they are subject to the lien of the mortgage.

**2.** CONDITIONAL SALES—FIXTURES.

A stipulation in a contract for the sale of chattels that they shall not become or be deemed part of any real estate cannot alter, as against one not a party to such contract, the legal effect of what may afterwards be done with such chattels.

On Demurrer to the Intervening Petition of the Phœnix Iron Works.

T. L. Edelen, for complainants.

Stone & Sudduth, for defendant.

D. W. Lindsey, for intervener.

BARR, District Judge. It appears from the intervening petition that the intervener, the Phœnix Iron-Works Company, made a contract on the 19th of September, 1893, with Frank Whitley to furnish certain electric machinery. In the letter of that date of Whitley, which was the original contract, he said:

"It is further agreed that the title to said machinery shall remain in, and does not pass from, the Phœnix Iron-Works Company, until full payment is made in cash. Promissory notes or bills of exchange shall be deemed payments only when paid at maturity in cash, and, in default of payment as herein agreed, the Phœnix Iron-Works Company, or their agent or attorney, may take possession of and remove said machinery, without legal process, which taking shall not constitute a waiver of its damage for such nonpayment. Said chattel shall not become or be deemed part of any real estate."

This contract was subsequently modified as to the character of the machinery ordered, and on the 20th day of October said Whitley wrote the following letter to the Phœnix Iron-Works Company:

"Frankfort, Ky., October 20th, 1893.

"Phœnix Iron-Works Co., Meadville, Pa.—Dear Sirs: By direction of the Capital Railway Company, I hereby authorize you to change my order from the steam plant for Frankfort, Ky., to the noncondensing steam plant, as per your proposal of September 29th, 1893, and we to pay you for same the sum of $4,000. Nothing in this order shall be construed as affecting the provisions of my original contract with you.

"[Signed] Frank Whitley.
"Accepted: Phœnix Iron-Works Co.,
"By John Dick, General Manager."

Under this contract the Phœnix Iron-Works Company constructed the machinery therein provided for, according to the specifications of September 29, 1893. This was done between the 15th of November, 1893, and December 9, 1893; but the work was not finished, set up, and completed in the power house at Frankfort until about the 2d day of April, 1894. There is a balance of over $2,000 claimed to be due on this contract for this machinery. The intervening petition claims a superior lien to that of the mortgage bondholders, who are seeking a foreclosure, for this balance. The mortgage sought to be foreclosed bears date September 26, 1893, and provides for the security of the bonds to be issued and dated on the 1st of November, 1893, for $70,000. This mortgage was acknowledged and recorded in the proper office October 16, 1893. It appears by the contract that it was contemplated by the parties that this electric machinery should be erected in a power house in Frankfort,

Ky., belonging to the Capital Railway Company, and which was to be a part of its electric street railway, and provisions are made for connecting and constructing said machinery in said power house. The question which the demurrer raises is whether or not the Phœnix Iron-Works Company have a superior lien to that of the mortgage bondholders.

It will be observed from this brief statement that the machinery was not furnished until after the mortgage was executed and the bonds issued, but that the machinery, when it was furnished, was under a contract which was made prior to the execution of the mortgage. The mortgage covered not only property which the Capital Railway Company then had, but all of its after-acquired property, and is, in terms, broad enough to include this machinery. So the question arises, when this machinery was put in this power house and became part of the realty, whether or not the mortgage lien attached, free from any claim of the Phœnix Iron-Works Company. This question should be determined by the Kentucky law, and by that law an agreement to retain the title of personal property sold until the payment of the purchase price, when the property is delivered, is, in effect, an absolute sale, with a mortgage back. Greer v. Church, 13 Bush, 430; Baldwin v. Crew, 86 Ky. 679, 7 S. W. 146; Lumber Co. v. Smith (Ky.) 32 S. W. 167; Hart v. Manufacturing Co., 7 Fed. 544. We think it is settled by the decisions of the supreme court that where there is a lien on personal property at the time it becomes the mortgagor's property, and the property is claimed by the mortgagee under the clause for future-acquired property, the mortgagee takes it with the lien or incumbrance, provided it is separate and distinct, and has not become part of the freehold which has been mortgaged. See the following cases: U. S. v. New Orleans R. Co., 12 Wall. 362; Fosdick v. Schall, 99 U. S. 251; Irrigation Co. v. Garland (decided Oct. 19, 1896) 17 Sup. Ct. 7. But where, as in this case, personal property has become a part of the realty mortgaged, with the consent of the intervening petitioner, the Phœnix Iron-Works Company, then such property, though acquired after the mortgage was executed, becomes subject to the superior lien of the mortgage. This because of the provision of the mortgage as to future-acquired property, and because it has become a part of the realty which was previously mortgaged. 2 Jones, Real Prop. §§ 1478, 1479. The general doctrine as to what is acquired under a mortgage clause embracing "after-acquired property," and its effect upon liens existing at the time when the property became subject to the mortgage, is thoroughly discussed by the supreme court in the following cases: See cases supra, and Dunham v. Railroad, 1 Wall. 255; Railroad Co. v. Cowdrey, 11 Wall. 459; Porter v. Steel Co., 120 U. S. 649, 7 Sup. Ct. 1206; Id., 122 U. S. 267, 283, 7 Sup. Ct. 1206; Thompson v. Railway Co., 132 U. S. 69, 10 Sup. Ct. 29; Railway Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546; Trust Co. v. Kneeland, 138 U. S. 414, 11 Sup. Ct. 357; McGourkey v. Railway Co., 146 U. S. 536, 13 Sup. Ct. 170; and Wade v. Railway Co., 149 U. S. 327, 13 Sup. Ct. 892. It is unnecessary to review these authorities, but, for the purpose of this case, it may be concluded that the Phœnix Iron-Works

Company's lien would have been superior to the mortgage lien, as it existed at the time the machinery became subject to the mortgage, if it had remained personal property and free from the realty; but when it became part of the realty mortgaged with the consent of the iron-works company, who had constructive notice of the mortgage, by reason of its being recorded, and without any arrangement with the mortgagee, the mortgage lien which was already upon the power house attached, and was superior to any claim of the Phœnix Iron-Works Company. The previous agreement that said chattel shall not become or be deemed part of any real estate cannot have any legal effect, as against the mortgagee's right, who was not a party to said agreement, and is in no way bound by it. See 2 Jones, Real Prop. §§ 1478, 1479. A party cannot, as against a stranger, contract against the legal results of his acts; and in this case both Whitley and the Phœnix Iron-Works Company and the railway company contemplated what was afterwards done, viz. that the machinery should be erected in the power house, and become a part of the realty which was mortgaged. It follows from these views that the demurrer to the intervening petition should be sustained, and it is so ordered.