PHŒNIX IRON-WORKS CO. v. NEW YORK SECURITY & TRUST CO. et al.

(Circuit Court of Appeals, Sixth Circuit. December 7, 1897.)

No. 529.

MORTGAGES—AFTER-ACQUIRED PROPERTY—CONDITIONAL SALES.

Machinery constituting the complete steam plant and motive power of a street railroad, when placed in its power house, becomes an integral part of the property, as a railroad system, and passes under a mortgage, previously executed and recorded, covering the entire road and plant, constructed and to be constructed, though such machinery was placed in the building under a contract by which the seller reserved title until full payment was received therefor, which payment has never been made.

Appeal from the Circuit Court of the United States for the District of Kentucky.

Bill was filed in the court below September 16, 1895, for foreclosure of mortgage executed by the Capital Railway Company, a corporation organized under the laws of Kentucky, with its principal office and business in the city of Frankfort, in that state, in favor of the New York Security & Trust Company, the original plaintiff in the court below; the same being a trust mortgage. The complainant is a corporation organized under the laws of the state of New York. The Capital Railway Company, the defendant, under authority conferred by its articles of incorporation, executed a mortgage on its franchise property and railway plant, of date September 26, 1893, to secure 70 bonds, in the sum of $1,000 each, bearing date November 1, 1893, and payable November 1, 1913, with interest until paid at the rate of 6 per cent., payable semiannually. This mortgage was acknowledged and recorded in the proper office, as required by law, October 16, 1893. The description of the property included in the mortgage is as follows: "All and singular, the aforesaid railroad of the said party of the first part, constructed and to be constructed, and situate, lying, and being in the city of Frankfort and in the county of Franklin and state of Kentucky, together with all the real and personal property and income of the said party, its lands, tenements, hereditaments, rights of way, fixtures, buildings, structures, road, switches, turnouts, ties, motors, cars, carriages, rolling stock, equipments, machinery, tools, implements, materials, chattels, privileges, franchises, rights, interests, appendages, appurtenances, incomes, rents, resources, benefits, investments, assets, and estates, legal and equitable, which are now owned, and shall hereafter be owned or acquired, by the said first party, or in any way belonging to or appertaining to its said railroad." The appellant, the Phœnix Iron-Works Company, intervened by petition in the case, and asserted a lien, prior to that of the mortgage, on certain machinery placed in the power house of the railway company, consisting of engine, stack, boiler, pump, etc., constituting the steam plant, and furnishing the motive power for the railroad. The Capital Railway Company had a contract with Frank Whitley to construct its lines and erect its power house, and furnish and set up its

steam plant; and the machinery in question was furnished by the intervening petitioner, under contract with Whitley, with the approval of the railway company. It is not claimed that the trustee in the mortgage was a party to the contract, or bound by it. The lien claimed is for $2,136.66, the balance due on the contract price from Whitley to the Phœnix Iron-Works Company; and priority for this debt over the lien of the mortgage is claimed under the contract made at the time between Whitley and the intervening petitioner. The contract, so far as its stipulations affect the matter now to be decided, is as follows: "It is further agreed that the title to said machinery shall remain in, and does not pass from, the Phœnix Iron-Works Company, until full payment is made in cash. Promissory notes or bills of exchange shall be deemed payment only when paid at maturity; and, in default of payment as herein agreed, the Phœnix Iron-Works Company, or their agent or attorney, may take possession of and remove said machinery without legal process, which taking shall not constitute a waiver of its damage for such default in payment. The said chattels shall not become or be deemed part of any real estate." The contract was made subject to the approval of the railway company, and was subsequently modified by agreement between Whitley, the railway company, and the Phœnix Iron-Works Company, with the express stipulation that the modification was not to affect the general provisions of the original contract. The machinery was furnished between November 15, 1893, and December 9, 1893, although it was not completed by final test until the early part of 1894. The machinery furnished by the Phœnix Iron-Works Company, and put in place for the railway company, constituted a complete steam plant. The machinery, as stated, was erected in the power station house of the defendant railway company. As will be observed from the dates, this machinery was furnished and set up in the power house subsequently to the execution and registration of the mortgage; and the intervener was, of course, affected with constructive notice of the mortgage thus registered. The mortgage contained the usual after-acquired property clause, and we do not understand that it is disputed that the mortgage covered this property. The insistence is that the machinery constituting the steam plant in the power house passed under the lien of the first mortgage, subject to the reservation of title in accordance with the contract between the intervener and Whitley, as before stated. The contract between the Phœnix Iron-Works Company and Whitley was not recorded. Under the original contract, Whitley, the contractor with the Capital Railway Company, was to be paid in cash from time to time during the progress of the work. The company was, however, unable to make cash payments; and after the work was partly completed the 70 bonds secured by the mortgage were delivered to Whitley in lieu of the cash payments originally contemplated, and were used by Whitley to raise money with which to complete and pay for the work done under his contract. The bonds were disposed of to different persons, mainly as collateral security for loans, and are now in the hands of innocent holders, who have, in one form and another, advanced cash for the same. The machinery was set up in the power house in the usual way, on brick foundations, and, of course, not attached to the building otherwise. The court below adjudged that, as between the intervening petitioner and the railway company, the contract created a lien in favor of the petitioner upon the machinery furnished, but further adjudged that this lien was inferior to the lien of the general mortgage; and the case is brought here by appeal. The conclusions of the circuit judge were stated in a written opinion now published. 77 Fed. 529.

D. W. Lindsey, for appellant.

Hornblower, Byrne, Taylor & Miller and T. L. Edelen, for appellee New York Security & Trust Co.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after stating the case, delivered the opinion of the court.

The learned circuit judge rested his decision in the case upon two grounds: First. That the machinery constituting the steam

plant and motive power, without which the railway company could not be operated, became, when furnished, an essential, integral part of the railway system, and, being a part of the original construction work, passed directly under the terms of the general mortgage, and that the stipulation in the contract between Whitley and the petitioner, retaining title, was invalid as against the first mortgage. Second. It was further held that a contract of this character, retaining title as security for debt, is required to be registered, under the recording acts of the state of Kentucky, and that the contract was for this reason invalid as against creditors, including the bondholders whose debts are by this mortgage secured. Either ground on which the judgment was placed, if legally valid, is conclusive of the case, and renders further discussion of the ruling unnecessary. We may remark that this question is not to be determined by any mere technical theory of what does or does not constitute a fixture, in respect to the ordinary real-estate mortgage, as between the mortgagor and the mortgagee. Nor does the determination of the case depend on any narrow question of mere physical injury to the building in the removal of the machinery placed therein. Decisions in relation to those questions furnish aid, by analogy, in the solution of a problem like the one at bar, but they are not decisive. The property of the railway company, and the uses of the machinery, are different, and this difference in the nature of the property and the uses to which it is put must be taken into account. The business is, moreover, quasi public, and the franchises of this class are granted in the interest of the public. The principle which controls the case, and the reasoning applicable, are fully set forth in Porter v. Steel Co., 120 U. S. 649, 7 Sup. Ct. 1206; Dunham v. Railway Co., 1 Wall. 254; Railroad Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546; Railroad Co. v. Cowdrey, 11 Wall. 459; Thompson v. Railroad Co., 132 U. S. 68, 10 Sup. Ct. 29. In Porter v. Steel Co., 122 U. S. 283, 7 Sup. Ct. 1208, the court said:

"Whatever is the rule applicable to locomotives and cars, and loose property susceptible of separate ownership and of separate liens, and to real estate not used for railroad purposes, as to their being unaffected by a prior mortgage given by the railroad company, covering after-acquired property, it is well settled, in the decisions of this court, that rails and other articles which become affixed to, and a part of, a railroad covered by a prior mortgage, will be held by the lien of such mortgage in favor of bona fide creditors, as against any contract, between the furnisher of the property and the railroad company, containing stipulations like those in the contracts in the present case. Dunham v. Railway Co., 1 Wall. 254; Railroad Co. v. Cowdrey, 11 Wall. 459, 480, 482; U. S. v. New Orleans & O. R. Co., 12 Wall. 362, 365; Dillon v. Barnard, 21 Wall. 430, 440; Fosdick v. Schall, 99 U. S. 235, 251."

As will be observed from the statement of the case, we are dealing with machinery which constitutes stationary, permanent motive power for the entire railway, affixed thereto, and an indispensable part of the railway as originally constructed. In this and other respects the case is clearly distinguishable from that class of cases relating to locomotive engines and other forms of rolling stock, and loose personal property, as to which it has been held that such property passes under the lien of the general mortgage, in the same con-

dition in which it comes to the hands of the mortgagor, and burdened with prior equities and liens, just as it would be burdened in the hands of such mortgagor. The principle is that when the general mortgage covers a railway system, properly described, and on the security and faith of which bonds are issued, and pass into the hands of innocent holders, it is not within the power of the company to displace the lien of the first mortgage, and in that way destroy the security of the mortgage, either by giving a second mortgage on the property or essential parts of the original system, or, indirectly, by making contracts like that now in question, under which, if valid as against the mortgage lien, a similar result would follow. The steam plant and motive power of this railway are stationary, and are just as essential to the operation of the railway as are the tracks. In a system constructed like this, the power house and the stationary machinery which furnish the motive power would be worthless without the railway tracks; and, on the other hand, it is equally true that the railway tracks would be valueless, except as second-hand material, without the power house and motive power. This is quite obvious, without elaboration. There could be no reasonable distinction, in principle, between the right to claim title to machinery, and thereby dismantle a power house, and the right to take up the rails, and thereby render worthless the tracks on which the cars are propelled for the purpose of operation. A doctrine which would permit title to be asserted to the machinery of a power house, which is a fixed part of the railway, thereby taking away the motive power, and deny the same right in respect to the tracks of a railway, would be purely arbitrary. The one is an essential part of the original organic structure of the road or system as a whole,—as much so as the other; and if an essential, integral part of the plant may be taken under the claim of right, this would render the remaining parts of the system worthless. The franchise is made valuable, and furnishes security to the bondholding creditor under the mortgage, only by reason of its use in connection with property; and, if such essential parts of the property may be taken, the franchise would be thereby itself rendered valueless. Monongahela Nav. Co. v. U. S., 148 U. S. 312, 13 Sup. Ct. 622; Chapman Valve Manuf'g Co. v. Oconto Water Co., 89 Wis. 264, 60 N. W. 1004. It is very clear in this case that the entire plant is properly described and conveyed in connection with the franchise. This case would therefore seem to come within the principle on which judgment was pronounced in respect to a similar mortgage, with a similar description, in Andrews v. Pipe Works, 23 C. C. A. 454, 77 Fed. 774; but we need not pursue or decide upon this special phase of the question, as we are of opinion that the case is controlled by the broader proposition announced in the cases before referred to. Whether we say that an indispensable part of the original construction work of the railway or other similar system becomes a fixture, or say that it is affixed to, and is an integral part of, the property, which, as a whole, constitutes the mortgage creditor's security, exactly the same thing is meant. When a necessary part of permanent, original construction work is put in, and becomes part of, the plant or system, such as stationary boilers, en-

gines, rails, sections of bridgework, and the like, it loses its previous character as separate, movable, personal property, and becomes subject to a mortgage properly conveying the entire thing of which such engine, boilers, etc., become permanently part. The view thus taken being decisive of the case, we do not find it necessary to determine the further question whether this contract was invalid, under the laws of Kentucky, for want of registration. There was no error in the decree of the court below, and it is affirmed.