EVANS v. KISTER et al.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1899.)

No. 651.

1. REVIEW—SPECIAL FINDINGS OF FACT.
    Where a jury is waived, and a judgment is based on special findings
of fact, the sufficiency of such findings to support the judgment may be
reviewed on a writ of error.

2. SAME.
    A defendant, sued as surety on a note, who admits signing the same,
has the burden of proving as a defense that it was not accepted by the
payee, or that he has been released; and special findings of the court, to
sustain a judgment in his favor, must contain every fact necessary to
establish such defense.

3. PRINCIPAL AND SURETY — RELEASE OF SURETY — FAILURE OF CREDITOR TO
    PERFECT LIEN.
    Ky. St. § 2496, makes valid written contracts for the sale of railroad
equipment or rolling stock which reserve the title in the seller until pay-
ment, but provides that, to be valid against subsequent purchasers for
value without notice, or creditors, such contracts shall be acknowledged
and registered. A street-railroad company purchased equipment, giving
a note therefor which reserved the title to the property in the payee until
the note should be paid. The note was signed by a surety, but was not
acknowledged or registered. The property was attached to the real estate
of the company, and thus became subject to a prior mortgage thereon.
Held, that the mortgagee was not a "creditor," within the meaning of the
statute, nor a subsequent purchaser without notice, and the payee's rights
were not affected by the failure to register the note; hence the fact of
such failure constituted no defense to the note on part of the surety.

4. SAME.
    If, through mere passive neglect, a creditor loses his lien on a security
which it was his duty to protect for the benefit of the surety, he will
thereby release the surety from liability only to the extent the latter has
suffered loss.

5. FIXTURES— PROPERTY ATTACHED TO MORTGAGED REALTY—MORTGAGEE AND
    MORTGAGOR.
    Neither an agreement between a seller and purchaser of personal prop-
erty that the title shall remain in the seller until the price is paid, nor the
recording of such agreement, will prevent the property from passing un-
der a previously existing mortgage of real estate to which it is attached,
unless the mortgagee is a party to the agreement.

6. PRINCIPAL AND SURETY—RELEASE OF SURETY.
    A surety on a note given for the purchase price of equipments for a
street railroad, and which provided that the articles sold should not be
attached to any real estate, so as to become a part thereof, but should
remain the property of the seller until the note was paid, is not released
from liability because the equipments were so attached to the company's
realty as to pass under a previously existing mortgage thereon, nor be-
cause the seller assisted in making such attachment, where it was neces-
sary to the use for which the property was purchased, and was contem-
plated by all the parties; the provision of the note being merely intended
to apply to the legal effect of such attachment.

In Error to the Circuit Court of the United States for the District
of Kentucky.

This was an action at law upon a promissory note executed for the
purchase price of certain machinery.

The maker of the note was a street-railway corporation, called the Park City Railway Company. and F. L. Kister, Jr., was an accommodation security. The suit was against the street-railway company and its surety, Kister. The latter, after pleading jointly with his principal, obtained leave to plead separately, and in his defense pleaded among other defenses not now important: (1) That the obligation, though signed by him, was never accepted by the payee, and no credit was given on the faith of his undertaking; (2) that, if the note was accepted, and if he ever became bound as surety. he was released by the negligence of the payee in failing to defend a replevin suit brought by the street-railway company against the vendor company, through which the street-railway company obtained possession of the machinery for which the note was improperly and illegally given; (3) that, if he was ever bound as surety, he was released by the negligence of the payee in consenting to the attachment of the machinery, for which the note was given, to the realty of the railway company, before recording said note, whereby the machinery became a fixture, and subject to a previously existing mortgage and other existing liens in favor of mechanics and contractors; (4) that there had been a variation in the contract, to which he had not consented. and by which a material part of the machinery had been returned to the vendor, "he having the right to look to such property as indemnity." By stipulation a jury was waived, and the case submitted upon the law and the facts to the court. The findings of fact and law were as follows:

### Findings of Fact.

(1) That on June 22, 1895, the Commercial Electric Company, of Indianapolis, entered into the following contract with the Park City Railway Company:

"We, the Commercial Electric Company. of Indianapolis, Ind., agree to furnish you two of our standard 100 K. W. generators, with switch board, instruments, and equipments complete, for the sum of ($3,400) thirty-four hundred dollars, delivery to be made f. o. b. cars, Bowling Green, Ky., on or before August 25th, and payment of the said thirty-four hundred dollars to be made on or before October 1, 1895, or thirty days after date of delivery, if delivery is delayed beyond August 25th, provided they fulfill the following specifications: The generators shall be capable of generating 100 K. W. capacity for sixteen consecutive hours. with a rise in temperature not to exceed 70 Fah. above the surrounding air, and shall carry full rating without sparking, and fulfill all our claims as set forth in the accompanying catalogue. We moreover guaranty the apparatus to be free from all electrical and mechanical defects. and agree to repair any such defects, free of charge, as may develop through normal usage within two years from date of acceptance.

"Accepted, June 22, 1895.         Commercial Electric Company,
                              "Per M. O. Southworth.
                  "Park City Railway Company,
        "Per M. H. Crump, Managing Director and Secty."

(2) That there were some delays in delivering this machinery, and some correspondence in regard thereto, which caused the railway company to send to the electric company a note for the amount agreed upon, which note is in the following words and figures:

"$3,400.                                 Dated ——, 18—.

"On or before the first day of November, 1895, for value received, in two one-hundred Killowatts street-railway power generators, I promise to pay to the order of the Commercial Electric Company of Indianapolis. Ind., three thousand four hundred and no-100 dollars, negotiable and payable at Potter Bank, Bowling Green, Ky., without any relief whatever from valuation or appraisement laws until paid, and 5 per cent. attorney's fees. The drawers and indorsers severally waive presentment for payment, protest, and notice of protest and nonpayment of this note. The express condition of the sale and purchase of the said machinery above named is such that the title and ownership of said machinery does not pass from the said Commercial Electric Company until this note and interest, and all other notes and interest

given in pursuance of such sale and purchase, are paid in full; and it is further agreed that the above property shall not be attached to, so as to become a part of, any real estate, but shall remain personal property until paid for.

"P. O. Address:                              Park City Railway Company,
                                                 "By I. B. Wilford, Prest.
                                                 "M. H. Crump, Secty.
                                        "F. L. Kister, Jr."

Subsequently indorsed: "Pay to the order of J. R. Evans, without recourse on us. Commercial Electric Co., by S. L. Hadley, Secy."

(3) That on the 17th of September, 1895, the electric company sent a letter, which it wrote, but did not sign, to the railway company, declining to accept said note with the single surety, and suggesting the name of another party as additional security, and also stating that it returned the note; that the note was not returned in said letter, nor at all. Thereafter the railway company, on September 19th, after its receipt of said letter, telegraphed the electric company to ship the generators immediately, with bill of lading attached, and to return note indorsed without recourse, which telegram the electric company received, and on the next day telegraphed the railway company that the generators were being loaded, and would be forwarded same night, with bill of lading and note attached.

(4) On the same day, September 20th, the electric company sent said note to J. L. Potter & Co., at Bowling Green, Ky., together with the following letter:

"Gentlemen: We inclose note of the Park City Railway Company, indorsed by F. L. Kister, attached to which you will find bill of lading for the apparatus, for which the note is given. The railway company wire us that they will discount the note without recourse. We have indorsed the note, leaving blank for the name of the party who will discount it, and we request that you deliver the bill of lading to them at such time as they pay you the $3,400, less 7 per cent. interest per annum, until November 1st. Upon the mailing of the amount to us, kindly wire us at our expense, so that we may send tracer after the goods, and oblige.

"P. S. Deliver bill of lading only at such time as note is paid."

Potter & Co. notified the railway company, on September 22d, of the receipt of the note, and that it could be discounted.

(5) Subsequently, under the authority of a letter from the electric company, dated October 8th, Theodore Varney, an employé of the electric company, filled the blank indorsement on the note with the name of J. R. Evans, the plaintiff herein.

(6) The defendant Kister was notified by Vaughn, the vice president of the railway company,—but when, the record does not disclose,—that said note had been "rejected" by the electric company; but Kister took no action in the matter, and gave notice to no one that he regarded himself as not bound on the note, until the January following the bringing of this suit, when, in the following letter to the plaintiff, he seemed to recognize his liability:

"The railway company owe me [Kister] nearly as much as the note you hold, which I have brought suit on, and as our court is now in session, and as the parties who bought Vaughn's interest are responsible men, I don't expect any costs on account of the note, but expect they will settle with me, and release me from loss on your note before my case against them is reached."

(7) The plaintiff and the electric company both had knowledge that Kister was only a surety on the note sued on at the time the same was executed.

(8) On the 30th of September the railway company sued out a writ of delivery against the electric company, and a large part of the machinery, which had been shipped to Bowling Green, was seized by the sheriff of Warren county, and, after being retained for the statutory two days by the sheriff, was, on October 5, 1895, delivered by the sheriff to the railway company. This action thus brought in the Warren circuit court was dismissed in the

following May, without prejudice, and a judgment for costs entered in favor of the defendant.

(9) That the electric company thereafter directed Varney, its agent, to have the note sued on recorded, for the purpose of saving, by this constructive notice, its rights retained on the face of the note; that Varney was told that said note could not be recorded, except it were acknowledged by the railway company, so as to entitle it to be recorded; that said note was not recorded as required by the Kentucky Statutes. Said note had no acknowledgment upon it, nor was any application made by the electric company to have such acknowledgment.

(10) That, when the machinery came to Bowling Green, it was placed upon and fastened to stone foundations, which had been prepared for it in the railway company's power house; that it was absolutely necessary that this machinery should be fastened to such foundations in order to use it for the purpose for which it was intended; that defendant Kister knew, at the time he signed the note, of this necessity; that he knew, at the time it was being put into the building and fastened to the foundations, that it was being so put in and fastened; that the electric company aided and assisted in thus attaching the machinery to the realty; that it was so attached before the maturity of the note; and that at said time there was upon the property of the railway company a mortgage for some $50,000.

(11) That the machinery thus delivered and attached to the freehold was the entire consideration for which the note was given, and was of equal value to the note.

(12) That the action of the electric company in thus aiding, assisting, directing, and controlling the putting in of the machinery in the railway company's power house, and attaching it to the freehold, before and without perfecting its lien security thereon by recording said note, as required by the Kentucky Statutes, was negligence; and that said Kister had no knowledge of said negligence, and did not acquiesce therein or consent thereto.

(13) That the railway company was not in a condition to receive and use the machinery on August 25, 1895, nor until very near the time it was actually received, and acquiesced in the delay of the electric company in delivering the same, and the time of delivery was modified by the consent of the parties, and the delivery was made and the machinery accepted, set up, on October 28, 1895, and no damage accrued to the railway company by reason of this delay.

(14) The electric company guarantied the machinery to be free from mechanical and electrical defects, and agreed to repair any such defects as might accrue within two years, and guarantied the capacity of the machinery, as stated in finding 1 hereof. The defendants have failed to sustain their claims to damages for failures in these particulars.

(15) The electric company agreed that it would send the railway company, without further costs to the latter, a new armature, if the old armature was shipped back to them, in accordance with the letter from the electric company of April, 1896. The price of a new armature was, $600. The old armature returned was damaged by fire in transit to the extent of $300. The new armature was not shipped, and therefore the note should have a credit of $600, the price of a new armature, less the $300 damage done to the old armature, or a net credit of $300 on this account.

(16) The plaintiff is not a bona fide holder for value without notice of the note sued upon, and the note is subject to the same defenses as though no transfer had been made of it from the electric company to the plaintiff.

### Conclusions of Law.

(1) The note sued upon, as a matter of law, was executed by Kister, as surety of the railway company, and so accepted by the electric company, and is a binding obligation, even though it be conceded that it was accepted because of the telegram of the 19th of September, 1895.

(2) That the suing out of the writ of delivery in the Warren circuit court, and the proceedings thereunder, did not affect the title and ownership of the machinery for which the note was executed, and the rights of the parties in that regard remained the same as if said action had not been instituted,

and by reason of said action the rights and liabilities of Kister have not been affected in any way whatever.

(3) That the agreement in the note as to the title of the property by the laws of Kentucky is, in effect, a sale with a mortgage back, but, in order to be effective, as against subsequent purchasers or lienholders for value, it must be acknowledged and recorded pursuant to the provisions of section 2496 of the Kentucky Statutes; that the omission to have said note so recorded released the defendant Kister from liability as surety on said note, he having the right to rely upon the exercise of due diligence by the electric company to perfect its title, thus retained, as against subsequent purchasers and creditors, and Kister is entitled to his costs as the plaintiff

(4) That the railway company is not entitled to damages for any delay in the delivery of the machinery, it having consented to such delay, and subsequently accepted the machinery.

(5) That the railway company, having failed to show a breach of the guaranty contained in the contract, is not entitled to damages upon its counterclaim therefor.

(6) That the railway company is entitled to recover, as a credit upon said note, the sum of $300 on account of the shipment of the old armature to the electric company in April, 1896.

(7) That the plaintiff, Evans, is not a bona fide holder for value of the note sued upon, but stands as the representative of the electric company in this litigation.

(8) That the plaintiff, as the representative of the electric company, is entitled to judgment against the railway company for $3,400, with interest from November 1, 1895, at 6 per cent. per annum, subject to a credit of $300 as of April, 1896, and his costs; that the suit be dismissed as against Kister, and that he recover his costs from the plaintiff.

Upon the facts thus found there was a judgment in favor of plaintiff below for the amount of the note and interest, less $300, the value of an armature returned, and a judgment in favor of the defendant F. L. Kister, Jr. The plaintiff alone has sued out this writ of error.

E. F. Trabue, for plaintiff in error.

Before TAFT and LURTON, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

Where a jury is waived, and a judgment rendered upon a special finding of fact by the court, the review of such judgment upon a writ of error "may extend to the sufficiency of the facts found to support the judgment." Rev. St. § 700; Dickinson v. Bank, 16 Wall. 250. It is otherwise if there be only a general finding, and no exceptions to the rulings of the court in the progress of the trial. British Queen Min. Co. v. Baker Silver Min. Co., 139 U. S. 222, 11 Sup. Ct. 523. The note in suit was signed by F. L. Kister, Jr. He did not deny his signature. It was in the possession of the plaintiff in error as indorsee. The burden was therefore upon him to show that a note, which he had signed and delivered, had in fact never been accepted by the payee. The burden was also upon him to show that, if he became bound, he had been released by the subsequent conduct of the creditor. Kortlander v. Elston, 6 U. S. App. 283, 2 C. C. A. 657, and 52 Fed. 180. Where the question for review is, as here, whether the facts found are sufficient to support the judgment, it is of the highest importance to him upon whom the burden rested that such special finding of facts shall include every fact es-

sential to support the judgment. Sneed v. Milling Co., 20 C. C. A. 230, 73 Fed. 925; Wesson v. Saline Co., 20 C. C. A. 227, 73 Fed. 917. In jury trials, it is the rule that, if there be special findings and a general verdict, and the former be irreconcilable with the latter, the special findings must control. Larkin v. Upton, 144 U. S. 19, 12 Sup. Ct. 614. The same rule must prevail where a jury has been waived, and a judgment rendered upon a special finding of facts. If the facts so found do not support the judgment, it should, upon writ of error, be reversed, with direction to enter the judgment which the facts demanded.

The ground upon which the plaintiff was denied a judgment was the negligence of the electric company in protecting the title to the machinery against subsequent purchasers and creditors by recording this note according to the provisions of section 2496 of the Kentucky Statutes, by Barbour & Carroll. That section is in these words:

"In any written contract of or for the sale of railroad equipment or rolling stock, deliverable immediately or subsequently, at stipulated periods, by the terms of which the purchase money, in whole or in part, is to be paid in the future, it may be agreed that the title to the property so sold, or contracted to be sold, shall not pass to or vest in the vendee until the purchase money shall have been fully paid, or that the vendor shall have and retain a lien thereon for the unpaid purchase money, notwithstanding delivery thereof to the vendee; but the terms of credit for the payment of the purchase money shall not exceed twenty-five years from the execution of the contract. Such agreement shall not be valid as against subsequent purchasers for value without notice, or against creditors until such contract shall have been acknowledged or proved as deeds of trust and mortgages are required to be, and lodged for record in the office of the secretary of state, where they shall be recorded."

This note, when delivered and accepted, was without acknowledgment, and could not be recorded. Neither does it appear that it was subsequently acknowledged, or that any effort was made by either the payee company or the surety thereon to obtain such acknowledgment as would admit the note to record. The section of the Code cited above seems to have originated in 1882. Prior to that provision the Kentucky supreme court had construed all contracts for the sale of personal property accompanied by delivery to the vendee, when the title was retained until payment of the price, as absolute sales "with mortgage back" to secure purchase price. Thus, in Greer v. Church, 13 Bush, 430, it was said that, if the facts showed a sale, "it does not matter whether the parties intended the title to pass or not." "The law, in furtherance of public policy and to prevent frauds, will treat the title as being where the nature of the transaction required it to be." Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146. All such contracts were, therefore, subject to the general registry laws of the state, whereby all unregistered deeds of trust and mortgages were "invalid against a purchaser for a valuable consideration without notice thereof or against creditors." Ky. St. § 496.

The effect of section 2496 was to give validity to a contract of sale "of railway equipment and rolling stock," where, by agreement, the title was retained by the vendor until payment of the purchase

money, notwithstanding delivery of the property to the vendee. Registration of such contract is not made essential to its validity, except as against subsequent purchasers for value without notice and creditors. Nonregistration would, therefore, have no other or different consequence than that resulting from nonregistration of a mortgage under the general registration law cited above. From what we have said, it must follow that the nonrecording of the sale note in suit would be of no consequence to the surety, unless the rights of subsequent purchasers for value and without notice, or the rights of "creditors," have intervened, whereby the property has been subjected to their claims. One is not a "creditor," within the protection of the registration statute, cited above, who, at the time of his levy or before sale under execution, receives notice that the property is subject to an unrecorded lien or mortgage. Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146. "To entitle a creditor, as such, to take advantage of an unrecorded mortgage, he should show that he had recovered judgment and sued out execution." Underwood v. Ogden, 6 B. Mon. 606. But a subsequent creditor may secure priority over an unrecorded mortgage by the levy of an execution or of an attachment. Wicks v. McConnell (Ky.) 43 S. W. 205. A previously existing mortgagee of the property of the railway company is, therefore, not a "creditor," within the meaning of section 2496. Neither is such a mortgagee a subsequent purchaser for value without notice. Fosdick v. Schall, 99 U. S. 235; U. S. v. New Orleans R. Co., 12 Wall. 362; Myer v. Car Co., 102 U. S. 1.

In Joyce v. Cockrill (decided at the present term) 92 Fed. 838, we had occasion to consider the circumstances under which a surety might be released through the conduct of the creditor, and there stated the general principle to be:

"If a creditor does any act inconsistent with the rights of the surety, and injurious to him, or omits to do any act which his duty to the surety obliges him to do, and thereby injures the surety, the latter will be discharged to the extent of such injury."

It is also elementary that the surety is entitled, for his indemnity, to the benefit of any securities which the creditor obtains from the principal debtor. If, therefore, the creditor surrender such securities to the debtor without consent of the surety, or they are lost as a consequence of the failure of the creditor to discharge some duty owing to the surety in respect to their protection or preservation, the surety will be discharged to the extent that he sustains loss by such misconduct. No "creditor" has acquired any lien upon the machinery for which this note was given, by levy of attachment or execution; nor, so far as this record shows, has the property been acquired by any purchaser for value without notice. How, then, has the surety been injured by the alleged laches of the creditor in not recording this note? Counsel for the surety say that:

"It is not necessary to show any actual injury. If his risk as surety is increased by the negligence of the creditor, he is released."

To support this, counsel cite the following decisions of the supreme or superior court of Kentucky: Sneed's Ex'r v. White, 3 J. J. Marsh. 525; Goodloe v. Clay, 6 B. Mon. 236; Ruble v. Norman, 7

Bush, 582; Martin v. Taylor, 8 Bush, 384; Royster v. Heck, 14 Ky. Law Rep. 266. These cases do announce the principle as being:

"That any agreement or active interference by the obligee, whereby the surety may be injured, or subjected to increased risk, or deprived of or suspended in the assertion of his equitable right to force the obligee to sue the principal, or of his right to pay the debt and occupy the attitude, in equity, of the obligee, will release the surety in equity." 3 J. J. Marsh. 525.

Without giving our entire assent to the rule as stated, it is clear that it has no application here. The creditors have made no "agreement" with the principal debtor by which the surety has been "deprived of or suspended in the assertion of" any right he might have had against his principal or the obligee. Nor have such consequences resulted from any "active interference" by the creditor. The Kentucky cases cited, and in which the rule stated is found, were cases in which the creditor had affirmatively discharged some lien upon property of the person primarily liable, or surrendered to him property out of which the debt should have been paid. There was, in each case, not mere passive neglect by which some hold upon the debtor had been lost, but conduct which Chief Justice Robertson calls "active interference." It is true that in the principal case the chief justice did say that where there was such "active interference," by which a lien was discharged or property surrendered, "it is not material whether the property so exempted was sufficient to discharge the whole debt or not." "It is," said the court, "the fact that the creditor interfered, and thereby increased the risk of the surety, and not the extent of the injury resulting from the act, which will relieve the surety from his liability in equity."

With the exception of the case of Royster v. Heck, cited above, decided by a court inferior to the supreme court, the facts showed that the property surrendered or the lien discharged, was of value sufficient to have paid the debt. The question, therefore, as to whether the voluntary release of a security of less value than the debt would discharge the surety absolutely, or only pro tanto, was not involved. But, however that may be, the rule as stated in the Kentucky cases has no application where the creditor has not actively or affirmatively discharged some lien or security which he ought to have preserved. Here the creditor has made no new agreement with the debtor, nor has he affirmatively discharged any lien or surrendered any property as a consequence of the failure to record this note. It is only claimed that the creditor has negligently failed to record his note. If we assume that in this he was lacking in the discharge of a duty owing to the surety, what are the consequences? It is well settled that a surety is discharged absolutely if the creditor, without his consent, enters into a valid agreement for forbearance, or if there be any variation in the contract to which he has not consented. But this results in the latter case because a new contract has been made, and in the former instance for the same reason in effect; for the right of the surety to proceed in equity against his principal and compel payment, or to himself pay and immediately proceed against his principal, has been suspended without his consent, and his risk thereby increased. Rees v. Berring-

ton, 2 White & T. Lead. Cas. Eq. p. 1867, and cases cited in note on pages 1876, 1877, and pages 1906, 1907. But these reasons have no application where, through mere laches, the creditor has lost some lien or security to which the surety might have looked for indemnity. It is well settled that if, through mere passive neglect, the creditor loses his hold upon a security which it was his duty to protect for the benefit of the surety, he will thereby exonerate the surety only to the extent that the latter has suffered loss. 2 White & T. Lead. Cas. Eq. pp. 1901, 1902; Wulff v. Jay, L. R. 7 Q. B. 763; Burr v. Boyer, 2 Neb. 265; Everly v. Rice, 20 Pa. St. 297; Vose v. Railway Co., 50 N. Y. 369; Capel v. Butler, 2 Sim. & S. 457; Neff's Appeal, 9 Watts & S. 36; Payne v. Bank, 6 Smedes & M. 24; Hayes v. Ward, 4 Johns. Ch. 123.

We shall not stop to inquire as to the duties owing to the surety in respect to the registration of a mortgage from the principal debtor, nor consider whether an unacknowledged sale note, such as that here involved, would stand in all respects as an instrument in a condition for registration, when accepted by the creditor. If we assume that it was the duty of the plaintiff in error, or his assignor, to have procured the acknowledgment and registration of this note, and that he has not done so, what then? The indemnity upon which the surety relied has not suffered as a consequence of nonregistration. The security which the parties intended to provide by a retention of title has been lost, if lost at all, by reason of the attachment of the machinery to the realty of the railway company, thereby becoming subject to a pre-existing mortgage, and not as a consequence of the previous nonregistration of the instrument retaining the title. Such a result would not have been saved by previous registration. If the subject of the sale was "loose property, susceptible of separate ownership and separate liens," it would pass under the mortgage, if there was an after-acquired property clause, in the same condition in which it came to the mortgagor. If, by agreement between the vendor and mortgagor, the former retained the title or a lien to secure the purchase price, the lien would be unaffected by any prior mortgage, whether registered or not. Fosdick v. Schall, 99 U. S. 235; U. S. v. New Orleans R. Co., 12 Wall. 362; Myer v. Car Co., 102 U. S. 1. Upon the other hand, if the machinery so purchased and set up has become so affixed as to be a part of the principal thing, it will pass under the mortgage, notwithstanding an agreement between the mortgagor and furnisher that the title shall remain in the vendor until payment. Railway Co. v. Cowdrey, 11 Wall. 459–482; Porter v. Steel Co., 122 U. S. 267, 7 Sup. Ct. 1206; Phœnix Iron-Works Co. v. New York Security & Trust Co., 54 U. S. App. 408, 28 C. C. A. 76, and 83 Fed. 757. Mere registration of an agreement between the mortgagor and vendor, preserving the personal character of property affixed to the freehold mortgaged, will not prevent the attached property from passing under a previously existing mortgage. To prevent such a result, the mortgagee must be a party to the agreement. New York Security & Trust Co. v. Capital Ry. Co., 77 Fed. 529; Jones, Real Prop. §§ 1743–1748; Snedeker v. Warring, 12 N. Y. 170; McFadden v. Allen, 134 N. Y. 489, 32 N. E. 21; Win-

slow v. Insurance Co., 4 Metc. (Mass.) 306. See Bank v. Baumeister, 87 Ky. 6, 7 S. W. 170; Manufacturing Co. v. Garven, 45 Ohio St. 289, 13 N. E. 493; Hunt v. Iron Co., 97 Mass. 279; Pierce v. George, 108 Mass. 78; McConnell v. Blood, 123 Mass. 47; Allen v. Woodard, 125 Mass. 400; Campbell v. Roddy, 44 N. J. Eq. 244, 14 Atl. 279. It may, perhaps, be conceded that the owner of land may make a valid agreement by which articles are to retain their character as personalty, notwithstanding they may be so annexed to the realty as that, without such agreement, they would in law be regarded as having become fixtures. Ford v. Cobb, 20 N. Y. 344. But such agreement will not affect a previous mortgagee who does not assent thereto. Jones, Real Prop. §§ 1750, 1751. It therefore follows that the mere neglect of the creditor to record this sale note has had no effect upon the rights of creditors having mortgages or other liens upon the freehold to which the machinery was attached at the time the note should have been recorded.

If, therefore, the judgment of the circuit court is to be sustained, it must be upon the ground that the creditor actively aided in so attaching the machinery to the mortgaged realty as that it became subject to the existing mortgage. It is true that it is provided in the sale note "that the above property shall not be attached to, so as to become a part of, any real estate, but shall remain personalty until paid for." But the facts found show that it was the purpose of all the parties, when the note was made, to attach the property just as was subsequently done, and that the attachment actually made was "absolutely necessary," in order to use it for the purpose for which it was intended, and that Kister knew this when he signed the note, and knew, at the time the work was being done, that it was being attached as originally intended by all parties, including himself. To construe this term of the agreement as forbidding the parties from in fact attaching this machinery to the freehold, when it was well known that such was the intention, and that it was "absolutely necessary" in order to use it for the purposes for which all the parties knew it was intended, would be to do violence to the contract. The provision quoted should be construed as providing only that the intended annexation to the freehold should not have the legal effect which might result but for the agreement. Thus construed, the creditor violated no agreement or obligation owing to the surety when it assisted in placing this machinery in position according to its contract, although the annexation thereby resulting operated to give the existing mortgage precedence over the lien reserved. This is a consequence for which the creditor is not responsible. All parties had constructive notice, at least, of the existing mortgage, and must be regarded as in effect consenting that this machinery should be affixed to the freehold notwithstanding the mortgage. The legal consequences are that the mortgage takes precedence. For this result the creditor is not to be held responsible. The surety has suffered no loss through the creditor's malfeasance, and no injury through the nonregistration of the sale note.

That this machinery was so affixed to the freehold as to become attached thereto, as between mortgagor and mortgagee, has been the

insistence of counsel for the defendant in error. It was necessarily so found by Judge Barr. We think the facts bring the case within our own decision in the case of Phœnix Iron-Works Co. v. New York Security & Trust Co., 54 U. S. App. 408, 28 C. C. A. 76, and 83 Fed. 757. But, if a different conclusion could be maintained upon the facts and law in respect to whether this machinery has been so affixed as to pass under the mortgage, the result would be the same to defendant in error. In that event, the surety would not have lost his right to recover the machinery upon payment of the debt. It has been argued that the evidence does not show that the creditor ever accepted this note, and that the judgment in favor of the surety should be affirmed, upon this ground. We think the findings of fact must be construed as including a finding that the note was accepted.

The third assignment of error must be overruled. The facts found justified the credit allowed for the armature not sent to replace one returned.

The first four assignments must be sustained. The judgment will be affirmed as to the Park City Railway Company, and reversed as to F. L. Kister, Jr., and remanded with directions to render judgment against him for the same amount found due from his principal.