## BORDER GAS CO. v. WINDROW et al.

(Circuit Court of Appeals, Fifth Circuit. January 6, 1925.)

No. 4376.

1. **Appeal and error** ⊚⇒1008(2)—**Where jury is waived, special findings have effect of verdict and must embrace finding on every material issue.**

Where jury is waived, special findings of fact by trial judge have effect of special finding by jury and must embrace finding on every material issue joined.

2. **Appeal and error** ⊚⇒1177(8)—**Effect of insufficient findings by trial judge sitting without jury, and of findings which do not support judgment, stated.**

Where special findings of trial judge sitting without jury do not embrace finding on every material issue and where judgment is contrary to facts found, result is mistrial, and cause will be remanded for new trial, though if facts found appear to meet essential issues and do not support judgment, it will be reversed and remanded with instructions to enter judgment in accordance with findings.

3. **Appeal and error** ⊚⇒850(2)—**Reviewing court cannot examine evidence and supply necessary finding.**

Reviewing court cannot examine evidence and supply necessary finding of fact to support judgment.

4. **Gas** ⊚⇒18—**Negligence of gas company not proximate cause of explosion.**

Where gas company capped pipe at point outside of new wall of building being remodeled, but plumbers in extending pipe into building uncapped it and permitted gas to escape into building, and then tested joints with a match, negligence of gas company, if any, *held* not proximate cause of explosion.

In Error to the District Court of the United States for the Southern District of Texas, Laredo Division; Joseph C. Hutcheson, Jr., Judge.

Action by D. Z. Windrow and N. C. Windrow against the Border Gas Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded, with instructions.

Howard Templeton, of San Antonio, Tex. (T. C. Mann, of Laredo, Tex., and Clinton G. Brown, of San Antonio, Tex., on the brief), for plaintiff in error.

A. C. Hamilton and S. T. Phelps, both of Laredo, Tex., for defendants in error.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. This case was tried below before the judge on a signed stipulation waiving the jury, and at the request of plaintiff in error (defendant below) the court made a special finding of facts as follows:

'"(1) That the plaintiffs, D. Z. and N. C. Windrow, at all of the times involved in this suit, were, and still are, partners doing business as druggists on Salinas avenue in the city of Laredo, Tex.; that the said plaintiffs were tenants of the building they occupied; that all of the times involved in this suit, the defendant, Border Gas Company, was, and still is, a corporation, engaged in the business of distributing and selling to consumers in the city of Laredo natural gas for lighting and heating purposes, and that the said Border Gas Company had a gas main on Salinas avenue and furnished gas to the plaintiffs in said drug store.

"(2) That for a period of time before and after the explosion involved in this case, the city of Laredo was engaged in a very extensive program of the construction of permanent street pavements and curbings and said work of constructing the street pavements, the city required all public utilities, including this defendant, to renew their mains in the streets and to put down new service pipes, running from the mains to a point inside of where the new curb lines would be, before the pavement was laid, in order that the pavements would not have to be dug up after they were laid; that the city planned to and did finally widen Salinas avenue, move back the curb line, and pave the said avenue; that this defendant in order to keep ahead of the city in said paving program, had to do a very large amount of work in the way of installing new gas mains and new service pipes; as a part of this work, and in obedience to the ordinance that had been passed by the city, this defendant in the month of February, 1923, installed a new gas main in the said Salinas avenue in front of the drug store of the plaintiffs; the city had furnished to this defendant a line, showing that the new curb line of the city street would be 18 inches or 2 feet back nearer to the property line than the old curb line had been; that before the new main and new service pipe was run into the plaintiff's drug store, there was an old service pipe running in from the old main, which had on it a valve or cut-off, which was within a few inches inside of the old curb line, and above this valve or cut-off there was in the cement sidewalk what is known as a curb box, the top of which could be raised and through which a key could be put down and the said old valve in

the old service pipe could be turned, so as to cut off the gas; that when the defendant put down the said new gas main it removed the said old service pipe and the said valve in the said old service pipe and cut off the lower part of the said old curb box, but left in the old sidewalk, which was to be torn up and destroyed when the street was widened, the top part of the said old curb box, and the defendant then installed from its main a new service pipe to run into and connect with the said Windrow Bros. Drug Store, and it installed a new valve or cut-off on said service pipe at a point where it would be inside of the new curb line which had been given to this defendant by the city, which new valve or cut-off was then about 18 inches farther in towards the property line than the old curb box was; the defendant had to put in several hundred such new service pipes and valves, and in plenty of time the defendant ordered a sufficient number of new curb boxes, which they proposed to install at a point where they would be over the new valves or cut-offs in the service pipes, but the factory did not ship all of the curb boxes promptly, and in order to keep ahead of the paving program, and in order to get their new pipes under the ground before the city paved the street and widened the curb, this defendant company had to put down some of its mains and some of its new service pipes and some of its new valves, and had to do so in the case of the Windrow Bros. Drug Store, before they received the curb boxes and before they could install the curb boxes; and that after such new service pipe and new valve was installed, the gas pipes were again connected up with the meter and fixtures inside of Windrow Bros. Drug Store, and they continued to use the gas up to about July 16, 1923.

"(3) That before any improvement work was done on the said Salinas avenue, the sidewalk in front of the Windrow Drug Store was very narrow, being only about 2 feet wide and the front wall of the drug store stuck out into the street further than the building immediately adjacent to the said drug store building, and the plaintiffs and the owners of the said building desired and planned to tear down the front wall of the said building and to make a new wall back on the line with the other building, so that there would be a sidewalk between the new curb line and the new front wall of the said building of some 6 or 7 feet and contractors were engaged to tear down the old front part of the said building to re-

move the old wall floor and roof thereof to saw off the floor and building at a point where the new wall was to be installed and to build a new front wall on the said building, and on or about July 16th the said contractor started in with said construction work.

"(4) On or about July 16, 1923, the defendant company was requested by the said contractor and by the plaintiffs to remove the gas meter on said premises and to cut off the gas and to remove the pipe that was in the way of the work, and advised that the owner of the building wanted the gas cut off because the owner intended to move back the front wall of said building and change the location and arrangement of the gas pipes. The defendant company sent a man to the said drug store to do said work on or about July 16th, and he found that the old wall of the building was still up and the old floor of the building between the old wall and the new wall was still in place, and he tried to turn off the gas with his wrench by putting his wrench down through the said old curb box above mentioned, and when he found no valve under said old curb box he realized that the new service pipe had been installed, and that the new valve was further in towards the property line and could not be reached through the said old curb box; the new valve being under and near the middle of the old sidewalk. The said representative of the defendant found piled up in the roadway, next to the curb, a lot of brick, lumber, and building material, and the old front wall and old floor of the building were still in place, and this made it very difficult for him to reach the said new valve or cut-off, and for this reason the said representative of the defendant did not cut off the gas by turning the said valve in the service pipe under the sidewalk, but the defendant company disconnected the meter, and after taking out a piece of pipe, at a place near the old floor line, the defendant company put in the end of the pipe a metal plug with threads, which is regularly made for such purpose and is of the best and most approved pattern for plugging up a pipe to prevent gas from escaping therefrom, and the said pipe was tested, and it did not leak, and no gas escaped or could escape from it. The defendant thus shut off and cut off the gas at a point a few inches inside of the old front wall and at a point several feet on the outside of where the new front wall would be placed, and several feet outside of the place where a temporary

wooden front partition was installed, which partition was a short distance back of the place where the new front wall was to be built, and the defendant company did not in any manner do anything with the said gas pipes on or in front of the plaintiffs' premises from the time that it so fully and securely plugged up said pipe until after the explosion took place.

"(5) That under the rules of the defendant company and under the rules and customs of the said company and of the plumbers who do gas fitting in the city of Laredo, and as is alleged by plaintiffs, no plumber or anyone except the defendant company is supposed to disconnect and cut off its gas or is supposed to connect with or cut in its gas, and no plumber is supposed to try to make a connection with any pipe that has gas in it, but under the rules and customs in the city of Laredo, if any plumber in trying to make a connection finds that there is gas in a pipe, he is required to and should notify the defendant company, and under the long-established custom (they have and to notify the defendant company, and) the defendant company sends some one to cut off the gas; and if there is gas in a pipe that is plugged in the city of Laredo under the ordinary pressure maintained, and if such pipe is opened, it can be detected readily and at once that gas is escaping.

"(6) That for the six or seven days after the defendant company so took out the meter and cut off the gas, there was no gas that escaped from the said pipes; that during said six or seven days the old front wall of the said building was taken down; the floor of said building was sawed off at a point where the new wall was to be built, and the old floor between the old wall and the new wall was removed, and this left the end of the pipe that had been plugged up by the defendant company out in the open air 3 or 4 feet in front of where the new wall as (was) to be constructed and 4 or 5 feet in front of where the new temporary wooden partition had been built. That the foundation for the new wall was put in and inclosed up to the floor line, which left an inclosed space under the said building, the floor of which was about 20 inches above the ground.

"(7) It was desired by the owner and contractor doing the work on the said building to have a pipe put in which would carry the gas through said new foundation and back to a point where a riser in the pipe would come up through the floor at a point back of where the new wall was to be built, so that gas could be obtained for use in the said building after it was completed. On the morning of the explosion, a few hours before the explosion, the contractor on said building, without saying anything to the defendant gas company, sent for some plumbers who were employed by the Laredo Plumbing Company, entirely independent of the defendant, to put in the said extra length of pipe so as to carry it beyond the new wall, and two Mexican plumbers came to do said work. The first thing they did was to open the pipe that this defendant gas company had securely plugged up, at which time one of the plumbers detected gas by smelling the same. The foreman for the contractor also detected gas about 30 minutes before the explosion and warned several workmen that gas was escaping and not to light matches, and although he had been there at this building most of the time since the defendant company had plugged the pipe as above stated, he had not, nor had any other person, detected any gas until the plumbers started working on said pipes and until about 30 minutes before the explosion. The plumbers connected with the said pipe that had gas in it a length of pipe and put the other end of the said length of pipe through the foundation of the new wall, so that the end of the said new length of pipe was under the floor of the building behind the new foundation and was open and allowed the gas to escape under the floor of the said building during the time that he was fitting in the piece of upright pipe that was to extend up through the floor so that the connection inside of the building could be made, and after the said plumber had connected his short pipe of upright pipe with the said piece of pipe that he had extended in under the floor of the said building, he put a cap on the top of the said upright piece of pipe so as to prevent further gas from coming out; and then this plumber proceeded to test the work he had installed by striking a match and beginning at the first joint that he had made closest to the street, at which place he detected no leak, and at which place he caused no explosion. He then moved his lighted match up close to the hole in the foundation through which he had extended his length of pipe and then and there the explosion occurred. The explosion blew up the floor of the drug store in about the middle of the store and closest to the front end for a space of several feet wide and several feet long. That this explosion wrecked

many of the fixtures belonging to the plaintiffs and caused damage to their drugs and other goods.

"(8) That before the explosion defendant's employees cut off the gas on premises occupied by plaintiffs and plugged the pipe on said premises and left same in condition so that gas could not and did not escape therefrom, and that the pipe was not thereafter disconnected or opened by defendant, but was disconnected and opened by the employees of the plumbing company."

Request for some 10 other findings of fact and certain conclusions of law were refused. However, there is nothing in the transcript to show that anything contrary to or additional to the facts which were found at the request of defendant was found which would support the judgment of the court.

[1-3] Where the jury is waived and a special finding of fact is made by the trial judge, the effect is the same as a special verdict by a jury, and must embrace a finding on every material issue joined. Where this is not done, and the judgment is contrary to the facts as found, the result is a mistrial and the cause must be remanded for a new trial. Towle v. First National Bank, 153 F. 566, 82 C. C. A. 520, and authorities therein cited. This court cannot examine the evidence and supply a necessary finding of fact to support the judgment. Packer v. Whittier, 91 F. 511, 33 C. C. A. 658. But where the facts as found appear to meet the essential issues of the case and they do not support the judgment, it will be reversed and remanded with instructions to enter such judgment as the situation demands. Evans v. Kister, 92 F. 828, 35 C. C. A. 28. In the last-mentioned case, in which Judges Taft and Lurton (now Chief Justice and former Associate Justice, respectively, of the Supreme Court) sat, it was said:

"Where the question for review is, as here, whether the facts found are sufficient to support the judgment, it is of the highest importance to him upon whom the burden rested that such special finding of facts shall include every fact essential to support the judgment. Sneed v. Milling Co., 20 C. C. A. 230, 73 F. 925; Wesson v. Saline Co., 20 C. C. A. 227, 73 F. 917. In jury trials, it is the rule that, if there be special findings and a general verdict, and the former be irreconcilable with the latter, the special findings must control. Larkin v. Upton, 144 U. S. 19, 12 Sup. Ct. 614. The same rule must prevail where a

3 F.(2d)—62

jury has been waived, and a judgment rendered upon a special finding of facts. If the facts so found do not support the judgment, it should, upon writ of error, be reversed, with direction to enter the judgment which the facts demanded."

[4] The facts in the record which we have a right to review in determining the case show clearly that the explosion which caused the damage in this case was occasioned by the intervening acts of negligence of the Laredo Plumbing Company or its agents, and that the fault of defendant, if any, was too remote to create any liability on the part of the gas company. The pipe was securely plugged or capped at the only place which could reasonably have been done by defendant under the circumstances, and no trouble would have arisen therefrom but for the acts of the plumbing company's employees who opened it and admittedly found that it contained gas. As left by the defendant, the capped end of this pipe was some five or six feet from the new wall of the building, and when the plumbers opened it they readily detected the presence of gas according to their own admissions. Notwithstanding this fact, they attached a pipe thereto and extended it through a hole in the wall below the floor of the drug store. Gas was allowed to escape under the building during the time a second pipe with elbow was being affixed to bring the gas into the store where it was connected with the meter. After completing the connection, the plumbers started testing for leaks with a match, instead of using the ordinary method of applying soapy water; as soon as the lighted match reached the edge of the hole leading under the house, the accumulated gas under the floor exploded and blew up the inside center of the drug store with a resultant damage of between $4,000 and $5,000. This conduct on the part of the plumbing company's employees was the grossest kind of negligence and was the sole proximate cause of the damage. As before indicated, negligence of the defendant, if any, was remote and could not by the use of ordinary care on the part of any one have brought about such results. No one could reasonably have expected experienced plumbers to do what the employees of the Laredo Plumbing Company did in this case. 1 Cooley on Torts (3d Ed.) p. 99; Wharton on Negligence, § 134. Defendant was only required to use that degree of care which a reasonably prudent man would have used under the circumstances, and we do not believe that the course of events which

followed its acts can be said to have been the natural or logical result of what it had done. As was stated by the Supreme Court of the United States in Insurance Co. v. Boon, 95 U. S. 117, on page 130 (24 L. Ed. 395):

"The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster. A careful consideration of the authorities will vindicate this rule."

See, also, Goodlander Milling Co. v. Standard Oil Co., 63 F. 400, 11 C. C. A. 253, 27 L. R. A. 583.

Hence, under the special finding of facts, there appears to be no legal liability on the part of defendant, Border Gas Company.

Our conclusion is that the judgment of the lower court should be reversed, and this cause remanded, with instructions to enter judgment for defendant; and it is so ordered.