### OMAHA GAS CO. v. CITY OF OMAHA.

(District Court, D. Nebraska, Omaha Division. October 13, 1914.)

(No. 103Z.)

1. MUNICIPAL CORPORATIONS ⬥⟺232—CONTRACTS—PERIOD.
    Where the charter of a city authorized the mayor and council to provide by ordinance or contract with any competent party for the supplying and furnishing of gas, a contract extending for reasonable period is valid, and the authority of the mayor and council is not impliedly limited to the official life of the council enacting the ordinance.

2. GAS ⬥⟺14(2)—CONTRACTS—CHARTER.
    Omaha City Charter (Comp. St. Neb. 1891, c. 12a) §§ 50, 61, declare that the mayor and council shall have power to provide for the lighting of streets, laying down of gas pipes, and to regulate the sale and use of gas and electric lights, and fix the price of gas, and that the mayor and council shall have power to erect, construct, and maintain waterworks, and to make all needful rules and regulations concerning the use for the water supply. By Laws Neb. 1893, c. 3, § 9, the latter section of the charter was amended, so as to authorize the mayor and city council to erect, construct, purchase, maintain, and operate subways or conduits, waterworks, gasworks, and electric light plants, and to provide by ordinance or contract with any competent party for the supplying and furnishing of water, gas, or electric light, and to fix the rates. *Held*, that section 61, as amended, though construed with section 50, did not limit the power of the mayor and council to grant a franchise for a fixed period and a contract with a gas company fixing rates for 25 years was valid, for, while the surrender of the public power to fix rates must clearly appear, the language should receive its ordinary construction.

3. STATUTES ⬥⟺112—AMENDMENT—TITLE.
    The title of Laws Neb. 1893, c. 3, purported to amend, among others, section 61 of the previous charter, which related only to the water supply for the city. Const. Neb. art. 3, § 11, declares that no bill shall contain more than one subject, and the same shall be clearly expressed in its title. *Held* that, as the supplying of water, gas, and electricity, all dealt with in the amendatory act, were germane to the thought of the original act, which was the supplying of the inhabitants of the city with a convenience of modern urban life, the title was broad enough to include the amendment.

---

⬥⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. STATUTES ☞112, 139, 141(1)—AMENDMENT—TITLE.

Laws Neb. 1893, c. 3, § 9, amending section 61 of the Omaha city charter, is not invalid as amending section 50, though expressing no such intention in the title, nor invalid as failing to set out section 50 as amended, and failing to repeal it; the amendatory act not encroaching on the powers of the city as expressed in section 50.

5. GAS ☞12—SUPPLY TO MUNICIPALITY—CONTRACTS—VALIDITY.

Though the act under which a city contracted with complainant for the furnishing of gas for 25 years at a fixed rate was invalid, yet, where the validity of the contract was for many years recognized by municipal authorities after the enactment of a new charter, under which it would have been valid, the city cannot thereafter question the contract.

In Equity. Bill by the Omaha Gas Company against the City of Omaha. Decree for complainant.

Guernsey, Parker & Miller, of Des Moines, Iowa, and W. H. Herdman, of Omaha, Neb., for Omaha Gas Co.

W. C. Lambert, of Omaha, Neb., for City of Omaha.

MUNGER, District Judge. This suit was brought to enjoin the enforcement of an ordinance of the city of Omaha, which undertook to fix the price to be charged by defendant for gas at $1 per 1,000 cubic feet. The sole question presented is whether the city stripped itself of the power to make such reduction, by entering into a contract with the defendant's predecessor, whereby the city granted the right to it and its successors to charge at least $1.25 per 1,000 cubic feet for 25 years from December 20, 1893.

[1] It is admitted that this contract was made, and there is no dispute over its terms; but the claims of the city are: (1) That the mayor and council had no power to make such a contract as to future rates to be charged, because the source of power, the amendment of the act of the Legislature, commonly called the city charter, was not passed pursuant to the constitutional requirements; and (2) if constitutional, a proper construction of it did not confer authority to fix rates for 25 years. The section of the charter in question is as follows:

"Sec. 61. The mayor and council shall have power to erect, construct, purchase, maintain and operate subways or conduits, waterworks, gasworks and electric light plants, either within or without the corporate limits of the city, and shall have power to fix, charge and collect a rental or compensation for the use of subways or conduits and of water, gas or electric lights furnished consumers, and to make all needful rules and regulations concerning the use of such subways, conduits, water, gas or electric lights, and to do all acts necessary for the construction, completion, management and control of the same, including the appropriation of private property for the public use in the construction and operation of the same, compensation for such appropriation to be made as is provided by this act and the mayor and council of each city created or governed by this act shall have power to provide by ordinance or contract with any competent party for the supplying and furnishing of water, gas or electric light, or electric power, to the public or private consumers within such city, and the rates, terms and conditions upon which the same may and shall be supplied and furnished during the period named in the ordinance or contract."

See section 9, c. 3, General Laws of Nebraska 1893.

Prior to the amendment just quoted there existed two sections of this city charter, as follows:

"Sec. 50. The mayor and council shall have power to regulate and provide for the lighting of streets, laying down gas pipes, and erection of lamp posts, electric towers, or other apparatus, and to regulate the sale and use of gas and electric lights, and fix and determine the price of gas, the charge of electric light, and the rent of gas meters within the city, and regulate the inspection thereof, and to regulate telephone service and the use of telephones within the city, and to fix and determine the charges for telephones and telephone service connections, and to prohibit or regulate the erection of telegraph, telephone, or electric light poles, or other poles for whatsoever purpose desired or used in the public grounds, streets, or alleys, and the placing of wires thereon, and to require the removal from the public grounds, streets, or alleys, of any or all such poles, and to require the removal and placing underground of any or all telegraph, telephone, or electric wires."

"Sec. 61. The mayor and council shall have power to erect, construct, and maintain waterworks, either within or without the corporate limits of the city, and to make all needful rules and regulations concerning the use of the water supplied by such waterworks, and to do all acts necessary for the construction, completion, management, and control of the same, including the appropriation of private property for the public use in the construction and operation of such waterworks, compensation for such appropriation to be made as is provided by this act. And the mayor and council of such city created or governed by this act shall have power to construct and maintain waterworks on such terms and under such regulations as may be agreed on, or to provide by contract for the construction and maintenance or leasing of waterworks, or any main or line thereof, or settling basins therefor."

Sections 50 and 61, c. 12a, Comp. Statutes of Nebraska 1891.

As to the construction to be placed upon the language of the act, the city contends that, because no limit of time for the duration of the contract is fixed by section 61 of the charter, the implied limit is during the official life of the council that enacted the ordinance. No decision of the Supreme Court of Nebraska is cited to sustain this proposition, and the Supreme Court of the United States has held that, where the power exists to make a contract for the furnishing of such service, a contract extending for a reasonable period will be sustained. Detroit v. Detroit Citizens' Street Railway Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592; Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 496, 27 Sup. Ct. 762, 51 L. Ed. 1155.

[2] It is further contended by the city that the language of section 61 of the city charter, considered in connection with the language of section 50, does not grant the right to the mayor and council to fix rates for 25 years, but only to grant a franchise for a fixed period. It reaches this conclusion by transposing the clauses of the statute, so that the words "during the period named in the ordinance or contract" follow the words "supplying and furnishing" and by supplying the words "shall have power to fix" before the words "the rates, terms and conditions on which the same may and shall be supplied and furnished." This seems to be a violent change of the language of the act, and to express a different meaning from that which the Legislature intended. In the language of a grant of this nature, whereby the public surrender the power to fix rates, the surrender must clearly appear and any reasonable doubt must be solved in favor of the public; but the cases cited on behalf of the city to support its contention

as to the meaning of the language of section 61 present such differences in the language of the statutes referred to from the language of this grant as to throw no light upon its interpretation. The courts incline to the natural and usual construction of the words of a statute, and the ordinary construction of the language employed here would make the words "during the period named in the ordinance or contract" apply alike to the rates, the terms, and conditions, and thus give the mayor and council power to contract for the period as to rates, terms, or conditions on which water, gas, electric light, or power may be supplied.

[3] The city also contends that the Legislature exceeded its authority in the attempt to enact the amendatory statute, so that the act is invalid, and no law, and hence the mayor and council had no authority under it to make the contract fixing rates for twenty-five years. The Constitution of Nebraska provides (article 3, § 11):

"No bill shall contain more than one subject, and the same shall be clearly expressed in its title. And no law shall be amended unless the new act contain the section or sections so amended, and the section or sections so amended shall be repealed."

The title of the amendatory act purported an amendment, among other sections, of section 61 of the previous charter, and it is said that this title did not clearly express the subject of the amendment, because the prior section 61 related only to a water supply for the city, and therefore an amendment relating to the supply of gas and electricity, was not germane to the subject of the amended section. It does not seem to be claimed that there is more than one subject in the amended section 61, although it relates to subways and conduits, to waterworks, gasworks, and electric light plants and to the erection, purchase, maintenance, and operation of them, as well as to the power to contract for the supplying of water, gas, electric light and power. It would be a needlessly rigid construction of the constitutional restriction to require a separate act, or even a separate section in each city charter, as the subject changes from conduits to subways, gas, water, electric light, or power, and no decisions are cited to support such a claim.

Indeed, such a construction would nullify section 50 of the charter, which counsel for the city claim is the only valid section relating to the subject of this suit, as that section relates to gas, electric lights, and telephones, to providing for a supply and the regulation of the price, and other topics. It has often been declared that this constitutional requirement is satisfied if there is one general object in an act (Kansas City & O. R. Co. v. Frey, 30 Neb. 790, 47 N. W. 87), and hence an entire Civil or Criminal Code, or an entire city charter, may be enacted under one title. If such varied interests may be within the sweep of one act, no reason is perceived why a section of a city charter may not relate to such cognate subjects as gas, electricity, and water, and to the procurement, regulation, and ownership thereof. The central thought of the original section 61 was the vesting of power in the city to supply the inhabitants with a convenience of modern urban life, and the addition by amendment of other sim-

ilar objects, such as gas, electricity, electric power, subways, and conduits, was not surreptitious legislation, but an appropriate enlargement of powers kindred to those already existing by virtue of the original section.

[4] It is further objected that this amendment, so far as it permitted the mayor and council to enter into a contract as to rates for gas or electric lights, was an amendment of section 50 of the charter, and therefore was invalid, because the title does not purport an amendment of that section, nor is that section set out as amended, nor is it repealed. By section 50 the mayor and council had power to provide for the lighting of streets and the laying down of gas pipes and to regulate the sale and use and to fix the price of gas. By the amendatory section 61 the council is not deprived of these powers, but is given additional power to erect or purchase, and to maintain and operate a gas plant, to fix and collect a compensation for the use of such plant, and to make a contract for the supply of gas and the rates for which it shall be supplied for a term of years. There is nothing inconsistent in the grant of these powers. The city's right to procure lights by allowing the use of the streets by a company is not invaded by a further grant of power to erect its own plant and to furnish illumination thereby. It may be doubted whether the right to regulate the rates for supplying gas is destroyed by a grant of the right to make a contract for a limited period at fixed terms. The city may exercise either power, and thus withhold its hand from any contract, if it so desires. Its entire freedom "to regulate the sale and use of gas" and to "fix and determine the price of gas" was left unimpaired by the Legislature, if it wished to exercise such right, and not to enter into any contract.

[5] Whether it be determined that the act of 1893, under which the mayor and council made this contract, was valid or otherwise, in 1897 the Legislature of Nebraska enacted a new city charter for the city of Omaha (chapter 10, Gen. Laws Neb. 1897), and section 135 of that act is a re-enactment of the terms of section 61 as it appears in the act of 1893. No question is made of the validity of that act, nor that the mayor and council had power after its passage, to make a contract, such as the one in question in this suit. In 1905 (Laws 1905, c. 14, § 103) the Legislature modified the statute by limiting the term of a contract that might be made by the city to a period of 10 years. For about 14 years after the enactment of the charter of 1897, both the city and the gas company acted under the terms of the ordinance treating it as valid; the company expending large sums of money in reliance upon the contract and the city receiving a royalty, as provided by this contract, of 5 cents per 1,000 cubic feet on the sale of gas, and paying for gas used by it but the sum of $1 per 1,000 cubic feet, as provided in the contract.

As the city had the power to make this contract after the enactment of the law of 1897, its conduct in treating it as a valid law for so long a period thereafter must be taken as estopping it from thereafter questioning it. The situation is essentially the same as in the case of City Railway Co. v. Citizens' Street Railroad Co., 166 U. S. 557,

569, 17 Sup. Ct. 653, 657 (41 L. Ed. 1114). The city of Indianapolis had granted to a street railway company the right to operate a street railway, using horses as a motive power, and subsequently, in 1889, an ordinance was passed allowing the company to use electricity as a propelling power. This ordinance was passed without legislative authority so to do, but in 1891 the Legislature conferred the right upon the council to authorize the use of electric power by street railway companies. It was held that this subsequent authority, and the conduct of the city in allowing the company to proceed thereunder placed the grant beyond attack. The court says:

"At this time there was no law of the state permitting electricity to be used, and it is now claimed that the common council exceeded its powers in authorizing this change to be made. But it seems that on March 3, 1891, a law was enacted by the General Assembly, declaring 'that any street or horse railroad heretofore or hereafter organized * * * may, with consent of the common council of the city, * * * use electricity for motive power.' Conceding, although not deciding, that the city might have exceeded its lawful power in authorizing the change from animal power to electricity, in the absence of legislative authority so to do, we think the act of 1891 should be construed, not only as conferring a new authority upon the city, but as a ratification of what the city had already done in that direction. In view of the large expenditures incurred by the company upon the faith of this ordinance, it is ill becoming the city to set up its own want of power to make it, when such power was directly and explicitly given a few months thereafter."

The principle announced in this case is decisive that the contract in this case made by the mayor and council and the plaintiff's assignor is not now open to attack by the city, and hence that the city may not enforce the provisions of the new ordinance fixing the price of gas until the terms of the first contract have expired.

A decree may be prepared accordingly.