**WESSEL et al. v. SEMINOLE PHOSPHATE CO.**

(Circuit Court of Appeals, Fourth Circuit. June 8, 1926.)

No. 2428.

1. Sales ⚫82(2).

In the absence of contrary provision in a contract of sale, the buyer is obligated to pay cash on delivery.

2. Sales ⚫108—Since under the terms of a contract of sale cancellation was not sellers' sole remedy, for buyer's refusal to make advance payment for a shipment, failure to ship held not cancellation of contract.

A contract for sale of a large quantity of nitrate of soda provided for payment 30 days after average dates of delivery, with a further provision that if buyer's financial responsibility should become impaired or unsatisfactory to sellers they should have the right to demand payment in advance or security. This was followed by a provision giving them the right to cancel unfilled portions of the contract if buyer failed to comply with terms of payment or any other terms of sale. *Held*, that cancellation was not sellers' sole remedy for failure of buyer to comply with a demand for advance payment for a shipment, and failure to make shipment was not cancellation of contract.

3. Contracts ⚫10(4)—Contract for sale and purchase of nitrate held not void for lack of mutuality.

In a contract for sale and purchase of nitrate, to be brought by sellers from South America by ship, provisions, "no arrival no sale," and giving sellers the option to cancel if vessels were lost or otherwise could not arrive, *held* not to make the contract void for lack of mutuality.

4. Sales ⚫85(1)—Phrase "no arrival no sale," in contract, defined.

The phrase "no arrival no sale," in a contract for sale of goods to be imported, has a

well-understood meaning, which is that if the goods do not arrive at destination buyer acquires no property in them and is not liable for the price.

**5. Contracts ⚖=>10(4)—Provision of contract allowing cancellation by sellers in case of loss of vessel held not to render it void for lack of mutuality.**

Provision in contract of sale of commodity, to be received by ship, allowing cancellation by seller if vessels should be lost, damaged, etc., *held* intended to apply to losses and delays beyond control of seller, and not to render the contract void for lack of mutuality.

**6. Appeal and error ⚖=>1177(8)—Trial ⚖=>391 —Special findings in case tried to court must embrace a finding on every material issue joined, and, in absence of such findings, appellate court must remand case for new trial.**

Special findings by the trial judge in an action at law where a jury has been waived pursuant to statute have the same effect as a special verdict of a jury and must embrace a finding on every material issue in the case, and where the ultimate facts in issue are not covered by the findings, the appellate court cannot supply them from evidentiary matters found, but must remand the cause for new trial.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Raleigh; Isaac M. Meekins, Judge.

Action by Harry L. Wessel and others, partners doing business as Wessel, Duval & Co., against the Seminole Phosphate Company. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

This was an action instituted by plaintiffs in error to recover damages from defendant in error for breach of a contract to purchase 600 tons of nitrate of soda. The parties will be referred to here in accordance with the positions which they occupied in the court below. A jury trial was waived, and the judge found the facts and rendered judgment for the defendant. The only exception in the case was the one taken to the entry of the judgment.

The contract which is the basis of the suit was as follows:

"Nitrate of Soda Contract.

"No. 3086.

"New York, July 30, 1920.

"Seminole Phosphate Company, Goldsboro, N. C., has purchased from Wessel, Duval & Co., New York:

"Quantity: Six hundred (600) tons.

"Weight: Tons to be 2,240 pounds each, gross weight delivered, less tare of seventenths of one per cent.

"Port: Wilmington, N. C.

"Expected arrival 300 tons January—300 tons February, 1921.

"Terms: Net cash thirty days from average date of delivery.

"Price: Four dollars five cents ($4.05) per 100 lbs. net weight ex vessel or ex store. Goods to test 95% nitrate of soda by West Coast method.

"Analysis: Analysis to be made by Stillwell & Gladding, from sample drawn at time of delivery ex vessel, with customary West Coast allowance, if of inferior assay.

"Copy: This contract is not assignable without written consent of seller.

"Sale is also subject to the following express terms and conditions:

"Shipment by steamers or equivalent sailers expected due to arrive from the West Coast of South America at the port or ports during the months herein mentioned. No arrival no sale. Sellers have option of making equivalent delivery ex vessel and/or ex store and/or shipping the nitrate for delivery under this contract to or from any port or place in the United States under the same conditions provided that in case of change of port from that above named sellers shall equalize freight to destination named by buyer on quantity so substituted.

"Vessel's name may be given at any time after execution of contract, sellers reserving the option of substituting with or without notice another vessel or vessels in approximately similar position. Should any vessel or vessels, before or after being named by the sellers, be lost, damaged, commandeered, diverted by government order, seized, captured or delayed, before or after sailing, a reasonable time is to be allowed sellers to substitute another vessel or sellers may at their option cancel portion so affected. Notice of such substitution or cancellation shall be given by sellers to buyer and such right of substitution includes resubstitution with notice.

"In the event of any damage to, jettison, or loss of cargo of a vessel named under this contract at sea or otherwise in transit, or discharging, the quantity originally named to buyers per such vessel is to be reduced in the same proportion as the entire quantity of the same grade which has been shipped by such vessel is reduced by such damage, jettison or loss, provided the balance of the cargo is brought forward to destination for sellers' account; subject always to sellers' right of apportionment in case of deficiency in quantity as above provided and to sellers' right to supply any deficiency from this or other vessels in approximately similar position or ex store.

"Nitrate to be taken by buyer at port of arrival or place when ready for delivery, ex vessel and/or ex store as above, in single bags

in customary good order. Buyer to give shipping instructions promptly after notice of time of expected arrival. Failure to give prompt shipping instructions may, at sellers' option, be deemed refusal to take the nitrate. Wharfage and transfer charges, if any, at port of arrival shall be for account of buyer.

"Each lot shall be considered a separate sale or contract, but sellers have and retain a continuing lien for the purchase price upon all nitrate of soda covered by this contract, with the right, in case any lot shall not be paid for in accordance herewith, to cancel this contract as to such lot or as to any other then undelivered lot or lots or portion of this contract or any other contract outstanding with buyer above named.

"The nitrate delivered under this contract is to be paid for in cash, in New York City in New York funds, in United States gold or the equivalent in currency. Buyers to pay cost of collection. Any assessment or change of export or import duty or tax on the merchandise covered by this contract shall be for account of buyer and shall be added to the purchase price.

"In case performance by sellers shall be delayed or rendered impossible by force majeure, including war, governmental authority, embargoes, prohibition of or restriction upon exports or imports, civil commotions, labor difficulties, accidents, loss or damage by act of God or the elements, interferences with tonnage or transportation, closing or interruption of customary short routes of transportation (including closing of Panama Canal) or any other contingency beyond sellers' control, and whether herein specifically enumerated or not, in connection with the production or transportation of the nitrate of soda covered by this contract, expected arrival shall be extended for a period equal to the duration of the contingency and for a sufficient time thereafter in which to make shipments. Sellers shall in no event be held responsible for any contingency beyond their control whether herein specifically provided for or not.

"War risk insurance for account of buyers.

"[Signed]   Seminole Phos. Co., Buyer.
    "By J. W. Daniel, Secy.
"Sold through H. W. Powell & Bro., Goldsboro, N. C.
    "EGH/CKR."

Printed on the left-hand margin of the contract were the following provisions: "If at any time the financial responsibility of buyer becomes impaired or unsatisfactory to sellers, they reserve the right to require payments in advance or satisfactory security or guaranty that invoices will be promptly paid when due. If buyer fails to comply with terms of payment or with any other terms of sale, sellers reserve the right to cancel unfilled portions of any contract or order, buyers remaining liable for all of unpaid accounts."

The only facts appearing in the record are those incorporated in the judgment, which, omitting formal findings, is as follows:

"Third. That delivery of said nitrate of soda was deferred from time to time at the request of the Seminole Company, both parties, however, agreeing to this.

"Fourth. On May 6, 1921, the following telegram was sent by the Seminole Company to the plaintiffs: 'Wessel, Duval & Co., New York. Please ship quick to us here twenty-five tons nitrate. Seminole Phosphate Company.'

"To which the plaintiffs replied as follows: 'Seminole Phosphate Company, Goldsboro, N. C. Are instructing our agents Wilmington ship twenty-five long tons to you Goldsboro immediately, drawing against bills lading understand you will protect draft on presentation. Wessel, Duval & Co.'

"The Seminole Company then replied as follows: 'Wessel, Duval & Co., New York. Telegram received advising shipment of twenty-five tons soda bill lading attached. This is not in accordance with terms of contract. Your contract reads plainly thirty days net see letter. Seminole Phosphate Company.'

"To which the plaintiffs replied: 'Seminole Phosphate Co., Goldsboro, N. C. Telegram received contract provides that if at any time financial responsibility of buyer becomes impaired or unsatisfactory to sellers they reserve right to require payment in advance or satisfactory security or guaranty that invoices will be promptly paid when due stop. We must obtain payment in advance or satisfactory security. Please advise. Wessel, Duval and Company.'

"Fifth. The financial responsibility of the Seminole Phosphate Company was in fact at the time the telegrams were dispatched, and at all times thereafter, unsatisfactory to the plaintiffs, its credit having become greatly impaired.

"Sixth. The Seminole Company never furnished any security for the shipment, nor made any attempt to do anything further in regard to the matter, it taking the position that the plaintiffs had canceled the contract by the failure to ship, upon 30 days' terms, the nitrate when requested.

"Seventh. The difference between the contract price of the nitrate and the market

price at the time and place of delivery amounts to $20,973.11 with interest from June 20, 1921, and is the amount which the plaintiffs would be entitled to recover, if they are entitled to recover at all.

"The court applying the law to the facts above found adjudges and considers that the plaintiffs' action in failing to ship the nitrate when requested, upon 30 days' terms as provided in said contract, amounted to a cancellation by them of said contract, and therefore it is adjudged, ordered, and decreed that the plaintiffs take nothing by their action, and that the defendant go hence without day and recover his costs in this behalf expended.

"I. M. Meekins,
"United States District Judge."

Edward R. Baird, Jr., of Norfolk, Va. (Baird, White & Lanning, of Norfolk, Va., H. G. Connor, Jr., of Wilson, N. C., and R. Clarence Dozier, of Norfolk, Va., on the brief), for plaintiffs in error.

Kenneth C. Royall, of Goldsboro, N. C., for defendant in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

PARKER, Circuit Judge (after stating the facts as above). The plaintiffs contend that the District Judge erred in holding that their action in failing to ship the nitrate when requested upon 30 days' terms amounted to a cancellation of the contract. Defendant contends that this holding was correct, as the exclusive remedy of the plaintiffs, upon refusal of defendant to pay in advance or furnish satisfactory security, was to cancel the contract. As additional grounds for sustaining the judgment of the court, the defendant contends that the contract sued on was void for lack of mutuality and that there was no finding by the court of a breach on the part of defendant.

We think that the learned District Judge erred in holding that the mere failure on the part of plaintiffs to ship the nitrate on 30 days' terms amounted to a cancellation of the contract. If it were true, as contended by defendant, that the exclusive remedy of plaintiffs, in case of defendant's failure to pay in advance or furnish satisfactory security, was to cancel the contract, then defendant would be justified in treating a failure to ship on terms after a demand for cash in advance as such cancellation. But, as we interpret the contract, cancellation was not the exclusive remedy of plaintiffs in such case.

[1, 2] In the absence of contrary provision in a contract of sale, it is the duty of the buyer to pay cash on delivery. Inner Shoe Tire Co. v. Treadway (C. C. A. 5th) 286 F. 838. It was provided in the body of this contract that payment should be made 30 days from average date of delivery, but upon the margin was printed the condition that, if the financial responsibility of the buyer should become impaired or unsatisfactory to sellers, they should have the right to require payment in advance or satisfactory security. The effect of this provision was merely to preserve to the sellers the right to demand, as a condition of performance on their part, what they would have had a right to demand at law, in the absence of the 30 day provision. In other words, the effect of the condition in the margin was to confer upon the sellers the right to eliminate the provision as to the 30 days' terms, if the credit of buyer should become impaired. Immediately after the sentence in the margin setting forth this condition, there followed another sentence providing that, if the buyer should fail to comply with the terms of payment, or any other terms of sale, sellers should have the right to cancel unfilled portions of the contract, buyer remaining liable for unpaid accounts. It is argued in behalf of defendant that this sentence prescribes the exclusive remedy of the seller upon the buyer's failure to pay cash in advance or provide security, but we do not so interpret it. The right to cancel is given, not upon failure to pay cash or furnish security, but upon failure "to comply with terms of payment," which, in case payment in advance is not demanded on account of impaired credit, would mean failure to pay within 30 days of the average date of delivery of any lot of nitrate delivered under the contract. The right to cancel was also given by the provision in question upon failure of buyer to comply with any other term of the contract, which clearly indicates that it was not the intention of the parties that the right of cancellation should be limited to the breach of conditions contained in the preceding sentence, and certainly not that it should furnish the sole remedy of the sellers upon such breach.

To give the language the interpretation contended for by defendant would lead to the absurd result that upon the buyer's credit becoming impaired coincident with a decline in the market, the sellers would be faced with the alternative of shipping the nitrate on 30 days' time and taking the risk of loss through failure of the buyer, or of canceling the contract and taking the loss resulting from the decline in the market. Certainly no such result was contemplated by the parties. The obvious purpose of the sentences printed on

the margin was to provide additional and independent safeguards for the sellers: First, the right to demand cash or security upon the buyer's credit becoming impaired; and, second, the right to cancel upon the buyer's failure to comply with payment or any other term of the contract. It was clearly not their purpose to diminish the safeguards of the seller, or to provide that he must cancel and accept the loss due to decline in the market, if unwilling to extend terms because of the impairment of buyer's credit. Such an interpretation would virtually give to the buyer the option of canceling the contract upon the impairment of his own credit.

Since, therefore, cancellation was not the exclusive remedy of plaintiffs, their failure to make shipments on 30 days' terms could not, of itself, be construed as a cancellation of the contract, and the court erred in so holding.

[3-5] This brings us to the second point relied on by defendant, viz., that the contract was void for lack of mutuality, and that the judgment in favor of defendant ought to be upheld on that account, whatever be the holding as to cancellation. This point cannot be sustained. There was a definite agreement on the part of plaintiffs to sell, and on the part of defendant to purchase, a certain quantity of nitrate of soda at a fixed price. The only ground of the contention of lack of mutuality is that the contract, which provided for importation from South America, contained the clause "no arrival no sale," and allowed cancellation at option of sellers if vessels should be lost, damaged, commandeered, diverted by government order, seized, captured, or delayed. The clause, "no arrival no sale" has a well-understood meaning, viz., that, if the goods do not arrive at destination, the buyer acquires no property in them and does not become liable to the sellers for the price. Harrison v. Fortlage, 161 U. S. 57, 16 S. Ct. 488, 40 L. Ed. 616; Moore v. W. R. Grace & Co. (C. C. A. 4th) 287 F. 103. The provision allowing cancellation by the sellers if vessels should be lost, damaged, etc., was clearly intended to apply to losses and delays beyond the control of sellers; and it is settled that such a provision does not render the contract void for lack of mutuality. Peck v. Stafford Flour Mills Co. (C. C. A. 8th) 289 F. 43; W. H. Goff Co. v. Lamborn & Co. (C. C. A. 5th) 281 F. 613.

[6] This brings us to the third and last point upon which defendant relies, that there is no finding that the defendant breached the contract sued on. We agree with defendant that there is no finding of breach of contract on its part; but we do not agree that this is suffi-cient to sustain the judgment in its favor. The court found certain evidentiary facts and concluded from these that there was a cancellation of the contract on the part of plaintiffs by failure to ship on 30 days' terms. As we have seen, this conclusion was erroneous as a matter of law. The court did not attempt to pass upon the question as to which party breached the contract, assuming that it was not canceled by failure to ship on 30 days' terms, nor as to whether there was a rescission by mutual consent; and the facts found are not sufficient for the determination of these matters. It is found that the defendant did not furnish security and took the position that plaintiffs had canceled the contract; but it is not found that plaintiffs offered or were ready and willing to perform the contract on their part, or that defendant refused to pay cash or furnish security or accept delivery under the contract. It is found that, when plaintiffs wired defendants that they were instructing their agents to ship 25 tons and to draw against bills of lading, defendant merely protested that this was not in accordance with terms of contract, but not that defendant refused to accept the goods or honor the draft. It is found that plaintiffs telegraphed in reply to this protest calling attention to their right to demand cash or security in advance, stating that they must have cash or satisfactory security and requesting advice of defendant, but this telegram does not show that plaintiffs demanded that defendant accept delivery under the contract. The plaintiffs state in their reply brief that thereafter "nothing further was done by either party." These findings relate to evidentiary matters and not the ultimate facts. Before it can be determined whether defendant did or did not breach the contract, it must be ascertained whether plaintiffs were ready, able, and willing to perform the contract on their part and tendered performance thereunder, or whether, plaintiffs being ready, able, and willing to perform, defendant refused to accept performance and thereby waived tender on the part of plaintiffs and breached the contract on its part, or whether there was a rescission of the contract by mutual consent. Florence Mining Co. v. Brown, 124 U. S. 385, 8 S. Ct. 531, 31 L. Ed. 424. These are the ultimate facts upon which the case turns, and there has been no sufficient finding with respect to them to justify the court in declaring as a matter of law that there has or has not been a breach or a rescission by mutual consent. Special findings by the trial judge in an action at law, where a jury trial has been waived pursuant to statute, have the same effect

as a special verdict of a jury, and must embrace a finding on every material issue joined in the case. Where the ultimate facts in issue are not covered by the findings, this court cannot supply them from evidentiary matters found, but must remand the cause for a new trial. Suydam v. Williamson, 61 U. S. (20 How.) 427, 441, 15 L. Ed. 978; Towle v. First Nat. Bank of Boston (C. C. A. 8th) 153 F. 566, 82 C. C. A. 520; Evans v. Kister (C. C. A. 6th) 92 F. 828, 35 C. C. A. 28; Packer v. Whittier (C. C. A. 1st) 91 F. 511, 33 C. C. A. 658.

For the error stated, the judgment of the District Court is reversed, and the cause is remanded for a new trial.

Reversed.