## EMPIRE NATURAL GAS CO. v. SOUTHWEST PIPE LINE CO.

District Court, N. D. Oklahoma.     April 13, 1928.

### No. 217.

1. Gas ⟨⟨⟩⟩9—Contract granting purchaser of natural gas right to lay pipe lines and build compressor stations created right running with land.

Contract granting right to purchaser of natural gas to lay pipe lines on leased premises, and to build compressor stations to assist in receiving and marketing of gas, held, to create an interest in realty running with the land during term of leasehold estate.

2. Gas ⟨⟨⟩⟩9—Contract granting purchaser of natural gas right to lay pipe lines and build compressor stations granted "easement," and was binding on assignee of leasehold estate (Rev. Laws Okl. 1910, §§ 1153, 2945).

Contract granting purchaser of natural gas right to lay pipe lines on leased premises and to build compressor stations to assist in receiving and marketing of gas granted to purchaser an "easement," within definition of realty under Rev. Laws Okl. 1910, §§ 1153, 2945, and was binding on assignee of leasehold estate chargeable with notice of its existence on date of purchase.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Easement.]

3. Specific performance ⟨⟨⟩⟩68—Contract for purchase of natural gas held enforceable in equity against assignee of leasehold estate.

Covenants of contract for purchase of natural gas, granting purchaser right to receive gas produced on leasehold estate, with provision that it should be binding on heirs, personal representatives, successors, and assigns of parties, held, enforceable in equity as against assignee of leasehold estate, where stipulations were such that no basis existed on which to estimate damages for a breach thereof.

4. Specific performance ⟨⟨⟩⟩22—Purchaser of natural gas held entitled to specific performance as against seller's assignee having opportunity to observe material objects on premises suggesting existence of easement.

Purchaser of natural gas under contract with owner of leasehold estate held entitled to specific performance as against assignee of seller, in view of existence of sufficient visible material objects in way of pipe lines and compressor stations located on premises which would reasonably suggest existence of easement, authorizing inference that leasehold estate was purchased with notice of existence of contract.

5. Evidence ⟨⟨⟩⟩21—It is common knowledge that purchasers of oil and gas properties ascertain amount of production.

It is a matter of common knowledge that purchasers of oil and gas properties invariably ascertain amount of production on producing properties.

6. Specific performance ⟨⟨⟩⟩62—Contract obtainable at great expense, or involving great loss, may be specifically enforced.

Where the subject of the contract is obtainable at great expense, or great loss might be involved, the contract may be specifically enforced.

7. Contracts ⟨⟨⟩⟩10(4)—Contract for sale of natural gas, requiring purchaser to receive ratably with other producers, held not invalid for want of mutuality (Comp. St. Okl. 1921, § 7907).

Contract for sale of natural gas, providing that purchaser agreed to receive in usual conduct of its business ratably with other producers in the same field all of the merchantable gas in its natural state, held, not invalid for want of mutuality; ratable clause of contract constituting nothing more than incorporation of Comp. St. Okl. 1921, § 7907.

**8. Contracts** ⟨⟩143,153—**Contract must be construed as whole, and interpreted, if possible, so as to render it mutual.**

Contract must be construed as a whole, and such interpretation given it, if possible, as to render it mutual.

**9. Contracts** ⟨⟩10(4)—**Contract to furnish buyer with supplies as needed during specific period is not lacking in mutuality.**

Where a purchaser has an established business, a contract by which the seller agrees to furnish the buyer with such supplies as may be needed by buyer during a specific period is not lacking in mutuality.

**10. Contracts** ⟨⟩175(1)—**Parties will be assumed to have contracted with reference to knowledge on subject.**

It will be assumed that parties to contract contracted with reference to knowledge which they then had on the subject.

**11. Contracts** ⟨⟩141(1)—**Parties are presumed to have contracted within law.**

Parties to a contract are presumed to have contracted within the law.

In Equity. Suit for specific performance and an injunction by the Empire Natural Gas Company against the Southwest Pipe Line Company. Decree for plaintiff.

Warren T. Spies, of Bartlesville, Okl., for plaintiff.

N. E. McNeill, of Tulsa, Okl., and Chapman, Cutler & Parker, of Chicago, Ill., for defendant.

KENNAMER, District Judge. This suit involves the validity of a written contract executed by the Revelle Oil Company, vendor, and the Empire Natural Gas Company, vendee. The contract, in part, provides:

"The undersigned vendor, in consideration of one ($1.00) dollar in hand paid, receipt acknowledged, hereby sell and agree to sell and deliver at the mouth of the wells to the Empire Natural Gas Company, vendee, and the vendee agrees to receive in the usual conduct of its business ratably with other producers in the same field having gas in the same producing horizon or sand, and in accordance with approved practices in the industry, all the merchantable gas in its natural state as produced (except casinghead gas) from wells now drilled and hereafter to be drilled on" eighty acres of land situated in Creek county, Oklahoma.

The contract was to be in force during the present leasehold estate on the described premises; the vendee was relieved of the obligation to receive gas when the same could not be delivered in commercial quantities; the contract provided that the vendee was to install necessary meter equipment, and was to have an easement for installing and maintaining proper equipment on the leasehold estate, the right to inspect its wells, to make necessary manipulation of gates at mouth of wells or point of delivery, to regulate the flow of gas, to meet fluctuating conditions of vendee's market, and to begin the construction of gathering lines within 30 days after acceptance of contract by vendee. Payments for gas to be made on division order furnished by vendor. The contract provided it was subject to present and future orders, rules, and regulations of duly constituted authorities having jurisdiction. The contract shall be binding on the heirs, personal representatives, successors, and assigns of the parties. It was executed on August 21, 1923.

The Revelle Oil Company was the lessee under an oil and gas lease dated December 12, 1912, covering the lands involved in this action. Two producing wells of natural gas in paying quantities were on the land on the date of the execution of the contract. In the vicinity of this lease the vendor had other producing properties. The vendee was engaged extensively in the business of purchasing, transporting by pipe line, and selling natural gas in Kansas, Missouri, and Oklahoma. Immediately after the execution of the contract the vendee constructed a pipe line to the field in which the leasehold estate involved here is situated at a cost of approximately $125,000, and received the gas continuously from November, 1923, from the Revelle Oil Company. The Revelle Oil Company assigned the leasehold estate on May 1. 1926, to the Bu-Vi-Bar Petroleum Corporation, which assignee continued to deliver the gas from the premises until January 4, 1927. The Bu-Vi-Bar Petroleum Corporation assigned the leasehold estate to the Southwest Pipe Line Company on or about December 1, 1926. Thereafter the Southwest Pipe Line Company disconnected the pipe lines of the plaintiff herein and refused delivery of any gas from the wells located on the leased premises. The defendant connected its own pipe line to the gas wells and has since been taking the gas, which the plaintiff alleges it is entitled to receive under its contract of purchase. This action is prosecuted by the plaintiff to enjoin the defendant from preventing the delivery of the gas to the plaintiff, to desist from interfering in any way in its possession of the leasehold estate, and to require the defendant to make specific performance of the contract.

In the oral argument and brief filed by counsel for the defendant the contention was made that the contract sued upon is one for the sale of personalty; that specific perform-

ance of the contract will not be decreed by a court of equity; that before the plaintiff can prevail there must have been an assumption of the obligations of the contract by the assignee of the leasehold estate, who was not a party to the sales contract; or there must have been a novation of the contract for the sale of the gas. The plea of innocent purchaser has been made.

[1] From a careful consideration of the authorities it appears the right granted by the contract to lay pipe lines upon the leased premises and to build compressor stations to assist in receiving and marketing the gas creates such an interest in realty, or imposes such burden upon the leasehold estate during its term, as to create a right running with the land during the term of the leasehold estate. This creates such an interest in the leasehold estate as to remove it from the classification of mere personalty. In Adams v. Gordon, 265 Ill. 87, 106 N. E. 517, the court held the right to maintain a pipe line connecting the plaintiff's premises with an artificial tank fed by a pump operated by a gasoline engine located on the defendant's land, with the right to receive water from such pump, tank, and pipe line, created such an easement, which passed as an appurtenant to a grant of the plaintiff's land from the defendant. In Hamilton Ridge Lumber Co. v. Southern Cotton Oil Co. (C. C. A.) 271 F. 934, the court held: "A contract by which in terms defendant sold to complainant all its timber of certain kinds situated in South Carolina, to be cut and delivered by defendant at complainant's mill, the purchase price to be measured by the logs, which were to be measured and paid for as delivered, * * * carries an interest in real estate." See Larsen v. Peterson, 53 N. J. Equity, 88, 30 A. 1094; Mudge v. Hughes (Tex. Civ. App.) 212 S. W. 819; Stanislaus Water Co. v. Bachman, 152 Cal. 716, 93 P. 858, 15 L. R. A. (N. S.) 359.

By section 1153, Revised Laws of Oklahoma 1910, it is provided: "The words 'land,' 'real estate' and 'premises,' when used herein or in any instrument relating to real property, are synonyms and shall be deemed to mean the same thing, and, unless otherwise qualified, to include lands, tenements and hereditaments; and the word 'appurtenances' unless otherwise qualified shall mean all improvements and every right of whatever character pertaining to the premises described." By section 2945, Revised Laws of Oklahoma 1910, it is declared that " * * * the words 'real property' are co-extensive with lands, tenements and hereditaments."

It is therefore plain from these statutory enactments that every right, of whatever character, pertaining to lands, tenements, and hereditaments, is included within the statutory definition of real estate. The contract for the purchase of the gas covered by the leasehold estate in question specifically provides that the vendee is granted an easement on the leased premises for the purpose of installing all necessary equipment and maintaining the same for the purpose of receiving the gas from the vendor, together with the right of inspection and testing of the wells, to manipulate the gates at the mouth of the wells, and to regulate the flow of the gas to meet fluctuating conditions of the vendee's market.

[2, 3] It is clear the contract granted to the vendee such an easement in the leasehold estate as to bring it within the statutory definition of realty, and is binding upon the assignee of the leasehold estate chargeable with notice of its existence on the date of its purchase. However, irrespective of any privity of estate at law, the covenants are such as may be enforced in equity as against the assignee of the property, where the stipulations are such that for a breach thereof there exists no basis upon which to estimate damages.

In the case of Whitney v. Union Railway, 11 Gray (Mass.) 359, 364, 71 Am. Dec. 715, the court said: "The precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform." See Pomeroy, § 689; Bald Eagle Co. v. Nittany Val. R. Co., 171 Pa. 284, 33 A. 239, 29 L. R. A. 423, 50 Am. St. Rep. 807; People's Natural Gas Co. v. American Natural Gas Co., 233 Pa. 569, 82 A. 935.

[4] It is apparent from the evidence in this case that, if the defendant in fact had no actual knowledge of the existence of the contract, there did exist sufficient visible material objects, in the way of pipe lines connected with the wells and compressor stations located on the premises, which would reasonably suggest the existence of the easement of the plaintiff. The evidence and circumstances under which the defendant purchased the leasehold estate would indicate that the defendant had actual knowledge of the existence of the contract for the purchase of the

gas. In the case of Wapa Oil & Development Co. v. McBride, 84 Okl. 184, 201 P. 984, the Supreme Court of Oklahoma held: "Whatever is 'notice' enough to excite attention and put a reasonably prudent person on his guard, and calls for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it."

[5] It seems reasonable that the defendant purchased the leasehold estate with notice of the existence of the contract for the sale of the gas. There was located on the premises a meter house, pipe lines, heaters, pinch gates, gas regulators, and meters. The gas from the wells flowed through the meter and was read once a day by an employee of the plaintiff. It is a matter of common knowledge that purchasers of oil and gas properties invariably ascertain the amount of production on producing properties, and one of the most satisfactory means of obtaining this information is to ascertain what the sales are and to whom the sales are made.

It is clear from the evidence introduced in the trial of this cause that the plaintiff has expended over $100,000 in the way of pipe lines and equipment for the purpose of utilizing this gas in supplying its numerous customers situated along its system of distribution, and that the gas supply from the leasehold estate is of peculiar value to it. In the case of Hall v. Philadelphia Co., 72 W. Va. 573, 78 S. E. 755, the court said: "Contracts of sale of mere commodities procurable in the market are never subjects of specific performance for obvious reasons, but this contract is not within that class. Natural gas is not obtainable in the general markets as is wheat, corn, flour, and live stock, and presumptively the supply of gas in question is obtainable only from the lessee. Principles declared in Hogg v. McGuffin, 67 W. Va. 456, 68 S. E. 41, 31 L. R. A. (N. S.) 491, sustain the jurisdiction on this additional ground."

[6] Where the subject of the contract is obtainable at great expense, or great loss may be involved, the contract should be enforced. See section 15 of Pomeroy on Specific Performance of Contracts (3d Ed.) 1926; Elk Refining Co. v. Falling Rock Cannel Coal Co., 92 W. Va. 479, 115 S. E. 431; Texas Co. v. Central Fuel Oil Co. (C. C. A.) 194 F. 1.

[7-10] It was argued the contract is void for want of mutuality. This contention is urged

25 F.(2d)—47½

for the reason the contract does not obligate the vendee to take any definite amount of gas from the vendor, and it is only optional with the vendee as to how much gas it shall take under the terms of the contract. The contract provides that the vendee "agrees to receive in the usual conduct of its business ratably with other producers in the same field all of the merchantable gas in its natural state." Such a provision is not objectionable for want of mutuality. The contract must be construed as a whole, and such an interpretation given it, if possible, as to render it mutual.

The contract obligates the vendee to purchase and receive ratably all of the merchantable gas, in its natural state, produced by the vendor from the premises during the life of the leasehold estate. Brewster v. Lanyon Zinc Co. (C. C. A.) 140 F. 801; Texas Co. v. Central Fuel Oil Co., supra; Adams v. Hazen, 123 Va. 304, 96 S. E. 741. Where a purchaser has an established business, the contract by which the seller agrees to furnish the buyer with such supplies as may be needed by the buyer during a specific period is not lacking in mutuality. It will be assumed the parties contracted with reference to the knowledge which they then had upon the subject. Minnesota Oil Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529; Golden Cycle Mining Co. v. Rapson Coal Mining Co., et al. (C. C. A.) 188 F. 179.

[11] Furthermore the parties are presumed to have contracted within the law. Section 7907, Compiled Oklahoma Statutes 1921, requires every corporation, joint-stock company, limited copartnership, or other person exercising the right to carry or transport natural gas by pipe line for hire, compensation, or otherwise, within the limits of the State of Oklahoma, to be a common purchaser thereof, without discrimination in favor of one producer or one person as against another, and where such purchaser is unable to purchase or transport all the natural gas from the producers of any particular field, "then it shall purchase and transport natural gas from each person or producer ratably." Hence the ratable clause of the contract was nothing more than the incorporation into the contract of the above statutory requirement.

Decree may be entered for the plaintiff, as prayed for in the bill.