## GRIFFIN et al. v. OKLAHOMA NATURAL GAS CORPORATION.

Circuit Court of Appeals, Tenth Circuit.
January 9, 1930.

No. 134.

546

F. J. Oyler, of Iola, Kan., A. M. Kenne, and G. R. Gard, of Iola, Kan., for appellants.

R. C. Allen, I. J. Underwood, and Sam Canterbury, all of Tulsa, Okl., and T. M. Lillard, of Topeka, Kan., for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge. This is a suit for injunction brought by the Oklahoma Natural Gas Corporation. against J. J. Griffin and the city of Iola, Kansas.

On June 24, 1927, the J. B. Kirk Gas & Smelting Company entered into a contract with the city, by which the Kirk Company agreed to sell and deliver to the city all the natural gas required by the city for fuel in the operation of its electric light and waterworks power plant, and the city agreed to use only natural gas for fuel in the operation of such power plant, and to buy all such fuel from the Kirk Company. This contract also contained the following provisions:

"First party (Kirk Company) shall not be liable in damages or otherwise for any shortage in the supply of gas caused by temporary breaks in its supply lines, or for failure to furnish gas by judicial proceedings against it, or from any cause whether of the same or different kind and character beyond the control of first party.

"In case of inability of first party from any cause, except temporary causes, to furnish second party (the city) a sufficient supply of gas to meet its needs, the second party shall have the right and privilege to acquire or purchase from other sources a sufficient amount of fuel to cover such shortage."

On the same date, the city entered into another contract with the Kirk Company by which the latter agreed to sell and deliver at Iola and the city agreed to purchase natural gas for resale to the inhabitants of the city for domestic and other uses. This contract contained the following provisions:

"This contract is made on the express condition that if by reason of the failure of gas in the territory from which the first party (Kirk Company) obtains its supply or if by reason of the depreciation of the natural pressure of said gas, it shall be unable to furnish a sufficient amount to supply said second party's (the city's) needs or to maintain the minimum pressure aforesaid, it should be unable to furnish gas under the required pressure and in the quantities herein agreed to be furnished, then and in either of the events in this paragraph enumerated, first party shall not be required to furnish gas hereunder, and it shall not be liable to said city for any shortage or failure to supply the same, provided that this contract shall be given priority over any and all sales or use of gas for industrial purposes and other contracts made subsequent thereto."

It also contained substantially the same provisions as those above quoted from the first mentioned contract.

Each contract provided that it should run for the term of five years from its date and should be binding upon the successors and assigns of the respective parties thereto.

The contracts of June 24, 1927, were assigned three times prior to March 1, 1928. The city was advised of such assignments, made no objection thereto and recognized the assignees by receiving gas and paying therefor.

On March 1, 1928, the Oklahoma Corporation purchased such contracts, together with certain physical properties owned by the Southern Kansas Gas Company and made formal application to the Public Service Commission for authority to acquire such contracts and physical property. The Public Service Commission notified the city of such application. The city made no objection and the Public Service Commission authorized the assignments. The city recognized the assignments by receiving gas for several months from the Oklahoma Corporation and paying the latter therefor.

The Oklahoma Corporation's predecessors failed to furnish the city an adequate supply of gas. The service was poor, unreliable and insufficient. On account thereof the city expended a substantial sum of money in 1927 and 1928 for stand-by gas and low pressure gas and oil burning equipment, so that its power plant might be kept continuously in operation. The city's domestic distributing system lost customers and, because of the uncertain supply of gas, customers refused to buy gas for heating purposes. However, the city took no steps to rescind the contracts on account of such facts, but continued to receive and pay for gas thereunder.

When the Oklahoma Corporation took over the properties it immediately made a careful survey of the situation, placed competent gas engineers in charge and, with the knowledge of the city, expended the sum of $310,000 in additions and betterments for the purpose of assuring a gas supply to the city, and, during the winter of 1928-1929 and up to March, 1929,—the date of the trial—had furnished an adequate supply of gas to the city, under such contracts.

On August 21, 1928, Griffin, a former employee of the Oklahoma Corporation, entered into a contract with the city, by which he agreed to sell natural gas to the city for one year to be used for operating its power plant. This contract contained a preferential right to renew it for one year. On September 12, 1928, the city entered into a supplemental contract with Griffin, by which it agreed to give him the preferential right to sell to it 250 million cubic feet of gas per year for use in such power plant and for sale by the city to its inhabitants for domestic use.

The city and Griffin have appealed from a decree which enjoined them from carrying out the contracts of August 21, 1928, and September 12, 1928, and enjoined the city from violating its contracts of June 24, 1927.

Counsel for the city and Griffin contend that the contracts of June 24, 1927, granted an exclusive privilege to the Oklahoma Corporation and its predecessors, and that, therefore, such contracts were void, under the provisions of section 14—1701, Kansas Revised Statutes, which reads, in part, as follows:

"Franchises. The board of commissioners of any city governed and controlled by the provisions of this act may permit any person, firm, or corporation to manufacture, sell and furnish artificial or natural gas light and heat, electric light, power or heat or steam heat to the inhabitants, and to build street railways to be operated over and along the streets and public grounds of such city, and may permit the construction and operation of telegraph and telephone lines and the laying of pipes, conduits, cables, and all appliances necessary for the construction and operation of gas and electric lights and steam-heat plants and electric railways over and along the streets and alleys of such city, upon the express conditions hereinafter imposed, and not otherwise, in this act, to wit: * * * Fourth. No person, firm or corporation shall ever be granted any exclusive franchise, right or privilege whatever. * * *"

A franchise is a special privilege conferred by government upon individuals and which does not belong to the citizens of the country, generally, of common right. Bank of Augusta v. Earle, 13 Pet. 519, 595, 10 L. Ed. 274; Irvine Toll B. Co. v. Estill County, 210 Ky. 170, 275 S. W. 634, 636; Gulf Refining Co. v. Cleveland Trust Co. (Miss.) 108 So. 158, 160; Omaha & C. B. St. Ry. Co. v. Omaha, 114 Neb. 483, 208 N. W. 123, 125; Mapleton v. Iowa L., H. & P. Co., 206 Iowa, 9, 216 N. W. 683, 685; 26 C. J. p. 1008, § 1.

The grant of a right to maintain and operate public utilities within a municipality and to exact compensation therefor is a franchise. Peoples Pass. R. Co. v. Memphis R. Co., 10 Wall. 38, 51, 19 L. Ed. 844; Denver & S. Ry. Co. v. Denver City Ry. Co., 2 Colo. 673; Milhau v. Sharp, 27 N. Y. 611, 619, 84 Am. Dec. 314; Town of Pelham v. The B.

F. Woolsey (D. C. N. Y.) 16 F. 418, 423; Walsh v. New York F. D. D. Co., 77 N. Y. 448, 452; 26 C. J. 1011, § 4.

Grants of the right or privilege to use public streets for the purpose of maintaining and operating railroads, electric light power lines, system of waterworks, gas pipe lines and the like, are franchises. New Orleans Gaslight Co. v. Louisiana Light Co., 115 U. S. 650, 659, 660, 6 S. Ct. 252, 29 L. Ed. 516; People v. State Bd. of Tax Com'rs, 174 N. Y. 417, 67 N. E. 69, 72; Purnell v. McLane, 98 Md. 589, 56 A. 830, 831; Spring Valley Water Works v. Schottler, 62 Cal. 69, 106–109; State v. Billings Gas Co., 55 Mont. 102, 173 P. 799, 800.

Section 12—842, Revised Stat. of Kans., 1923, expressly authorizes a city "to construct and operate, gas plants, electric-light plants, * * * waterworks, natural-gas wells, and petroleum-oil wells * * * and to contract for and purchase natural gas, * * * to be delivered where purchased or elsewhere, and to construct, maintain and operate pipe lines, * * * and other equipment for the transportation of the same from the place where such natural gas * * * may be delivered, to such points within or without the city as may be deemed advisable, for the purpose of supplying said city, its citizens and others, with water, light, gas, power, fuel or heat for domestic use or other purposes. * * *"

We think that the context clearly shows that the word "franchise" as employed in section 14—1701, supra, means a special franchise to establish and maintain a public utility, to use the public streets therefor and to collect compensation for services, and not an ordinary contract to purchase gas, such as the contracts involved in the instant case, which are expressly authorized by the provisions of section 12—842, supra.

Counsel for the city and Griffin further contend that the city was without power to enter into the contracts for a period of longer than one year, on the theory that one board of city commissioners could not bind their successors in office.

A city has two classes of powers: One, legislative or governmental, in the exercise of which it acts as a sovereign; the other, proprietary or business, in the exercise of which it acts and contracts for the private advantages of the city and its inhabitants. In the exercise of powers which are strictly governmental, the officers of the city may make no grant or contract which will bind the municipality beyond the terms of their offices, because they may not lawfully circumscribe the legislative powers of their successors. But, in the exercise of the business powers of a city, its officers are limited by no such rule and they may lawfully exercise these powers in the same way and they are governed by the same rules as a private individual or corporation. Tuttle Bros. & Bruce v. Cedar Rapids (C. C. A. 8) 176 F. 86, 88; Illinois T. & S. Bank v. Ark. City (C. C. A. 8) 76 F. 271, 282, 34 L. R. A. 518. The contracts in the instant case are valid, if the period of their duration is a reasonable one under the existing facts and circumstances. Omaha Gas Co. v. City of Omaha (D. C. Neb.) 249 F. 350, 352. It is manifest that, in order for the city to obtain a favorable contract for the purchase of gas, it would have to enter into such contract for a substantial period, otherwise no gas company would be justified in making the necessary expenditure for facilities required to furnish such gas. We think that the contracts in the instant case were for a reasonable period and within the power of the city officials.

Counsel for the city and Griffin further contend that the Oklahoma Corporation and its predecessors failed to furnish a sufficient supply of gas and that the city was not precluded, under its contracts, under such circumstances, from purchasing gas elsewhere. The difficulty with this contention is that, at the time Griffin's contracts were entered into, the Oklahoma Corporation was prepared to furnish and was actually furnishing an adequate supply of gas to the city.

Counsel for the city and Griffin further contend that the contracts are void because in restraint of trade. If the restraint were reasonable, under the particular facts and circumstances of the case, the contracts are not invalid because of such restraint. Gibbs v. Consolidated Gas Co., 130 U. S. 396, 409, 9 S. Ct. 553, 32 L. Ed. 979; Hall Mfg. Co. v. Western Steel & I. Works (C. C. A. 7) 227 F. 588, 592, L. R. A. 1916C, 620; Mills v. Ressler, 87 Kan. 549, 125 P. 58; 13 C. J. 467, § 410; Id. 473, § 418; Id. 475, § 419. We think, in view of the expenditure necessary to be made by the Oklahoma Corporation and its predecessors to furnish gas to the city and the fact that the city was the only customer for such gas at Iola, an exclusive contract for a period of five years was reasonable.

Counsel for the city and Griffin further contend that the contracts are not assignable. The contracts are made assignable by their express terms and the city is now

estopped to deny the validity of such assignments to the Oklahoma Corporation, after permitting such corporation to expend large sums of money in additions and betterments for the purpose of assuring a gas supply to the city and after accepting gas from the Oklahoma Corporation and paying therefor, pursuant to such contracts, since the doctrine of estoppel applies to the city when acting in its proprietary capacity. City and County of Denver v. Denver Tramway Corp. (C. C. A. 8) 23 F.(2d) 287, 299.

Counsel for the city and Griffin further contend that the contracts are void for want of mutuality. The contracts bound the Oklahoma Corporation and its predecessors to furnish the gas required by the city. The first contract expressly required the city to buy all fuel required by it for the operation of its power plant during the life of the contract from the Kirk Company and its successors. The second contract, by implication, required the city to purchase all of the gas required for sale and distribution through its distributing system from the Kirk Company and its successors, because, by express provision of the contract, the city was given the right to purchase gas elsewhere only in the event of the permanent inability of the Kirk Company and its successors to furnish such gas. A contract to furnish such gas, as shall be required or consumed by an established business, is a contract to furnish an ascertainable quantity of gas and is valid. Conley Camera Co. v. Multiscope & Film Co. (C. C. A.) 216 F. 892, 896; Loudenback Fert. Co. v. Tenn. Phosphate Co. (C. C. A. 6) 121 F. 298, 300, 61 L. R. A. 402; Walker Mfg. Co. v. Swift & Co. (C. C. A. 5) 200 F. 529, 531, 43 L. R. A. (N. S.) 730; Golden Cycle Mining Co. v. Rapson Coal M. Co. (C. C. A. 8) 188 F. 179, 183; Klipstein & Co. v. Allen (C. C.) 123 F. 992; Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co. (C. C. A. 8) 114 F. 77, 81, 57 L. R. A. 696; Manhattan Oil Co. v. Richardson Lub. Co. (C. C. A. 2) 113 F. 923; Empire Natural Gas Co. v. S. W. Pipe Line Co. (D. C. Okl.) 25 F.(2d) 742, 745; 13 C. J. p. 339, § 191. The provisions in the contracts, exempting the Kirk Company and its successors from failure to furnish gas due to causes beyond its control, did not render the contracts void for want of mutuality. Wessel v. Seminole Phosphate Co. (C. C. A. 4) 13 F.(2d) 999, 1003; Peck v. Stafford Flour Mills Co. (C. C. A. 8) 289 F. 43, 45; Goff Co. v. Lamborn & Co. (C. C. A. 5) 281 F. 613, 616. We conclude that the contracts were not void for want of mutuality.

Counsel for the city and Griffin further contend that the Oklahoma Corporation has breached the contracts. The evidence clearly shows that the Oklahoma Corporation has fully performed the contracts since the date of their transfer to it, and that the city has accepted such performance and paid therefor.

Counsel for the city and Griffin further contend that the Oklahoma Corporation was not entitled to equitable relief. As a general rule, a court of equity will not decree the specific performance of a contract relating to chattels. Francis v. Medill (Del. Ch.) 141 A. 697, 698; Krause v. Hoffmann, 239 Mich. 348, 214 N. W. 146, 147; Black Diamond C. M. Co. v. Jones C. Co., 200 Ala. 276, 76 So. 42, 43. The reason for the rule is that the injured party usually has an adequate remedy at law for the breach of a contract relating to chattels. Manchester Dairy System v. Hayward, 82 N. H. 193, 132 A. 12, 15; Elephant Butte A. Ass'n v. Rouault (N. M.) 262 P. 185, 194; Krause v. Hoffmann, supra; Klitten v. Stewart, 125 Wash. 186, 215 P. 513, 514; Pomeroy's Spec. Per. of Contracts (3d Ed.) § 11. Where such adequate remedy at law does not exist, equity, in a proper case, will decree specific performance of a contract relating to chattels. Virginia Shipbuilding Corp. v. United States (C. C. A. 4) 22 F.(2d) 38, 50; Texas Co. v. Cent. Fuel Oil Co. (C. C. A. 8) 194 F. 1, 13; American Smelting & R. Co. v. Bunker Hill & S. M. & C. Co. (D. C. Or.) 248 F. 172, 182; Dahlstrom Metallic Door Co. v. Evatt Const. Co., 256 Mass. 404, 152 N. E. 715, 718, 719. The adequate remedy at law, which will preclude the granting of specific performance of a contract, must be as certain, prompt, complete and efficient to obtain the ends of justice as a decree of specific performance. National Marking Machine Co. v. Triumph Mfg. Co. (C. C. A. 8) 13 F.(2d) 6, 9; Southwest Pipe Line Co. v. Empire Natural Gas Co. (C. C. A. 8) 33 F.(2d) 248, 258; Texas Co. v. Central Fuel Oil Co., supra, pages 10, 11, of 194 F.

An injunction against the breach of a contract is a negative decree of specific performance. The power and duty of a court of equity to grant such injunction is broader than its power and duty to grant a decree of specific performance, since an injunction to restrain acts in violation of a lawful contract will be granted, even when specific performance would be denied because of the nature of the contract. Nat. Marking Mach. Co. v. Mfg. Co., supra, page 9 of 13 F.(2d); Texas

Co. v. Cent. Fuel Oil Co., supra, pages 22, 23 of 194 F.; Chicago & A. Ry. Co. v. New York, L. E. & W. R. Co. (C. C.) 24 F. 516, 522; Singer Sewing-M. Co. v. Union Button-Hole & E. Co., 1 Holmes, 253, Fed. Cas. No. 12904.

In the instant case, the contracts dealt with a commodity not readily obtainable or salable in a general market. Southwest Pipe Line Co. v. Empire Natural Gas Co., supra, page 258 of 33 F.(2d). The Oklahoma Corporation had expended large sums of money to enable it to fulfill its contracts with the city and to enable it to deliver the gas at Iola. The city was the only wholesale customer for such gas in Iola. The Oklahoma Corporation had no franchise and could not dispose of such gas at retail in Iola. The contracts provided for future delivery over a period of approximately two years and nine months beyond the date when this suit was commenced. The damages for such future period would be exceedingly difficult of ascertainment. Such being the facts, it is our opinion that the Oklahoma Corporation did not have an adequate remedy at law.

We conclude that the decree appealed from was proper and it is affirmed with costs.